**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Major Junior WRIGHT, Defendant–Appellant.**

Nos. 93–3055, 93–3119.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 18, 1993.

Decided Dec. 14, 1993.

---

1. Chief Judge of the Southern District of Texas, sitting by designation.

Robert E. Lindsay (briefed), Alan Hecht-kopf, U.S. Dept. of Justice, Appellate Section, Tax Div., Patricia Heffernan (argued), U.S. Dept. of Justice, Washington, DC, for U.S.

Robert L. Abell (argued and briefed), Lexington, KY, for defendant-appellant.

Before: KENNEDY, MILBURN, and GUY, Circuit Judges.

KENNEDY, Circuit Judge.

Defendant was convicted of conspiracy to defraud the United States Internal Revenue Service (the "IRS") by preparing, causing to be prepared and causing to be filed income tax returns claiming fraudulent tax refunds in violation of 18 U.S.C. § 286, and of making false claims against the United States in violation of 18 U.S.C. §§ 287 and 2. Defendant appeals the sentence imposed by the United States District Court for the Southern District of Ohio; specifically, defendant contests the application of United States Sentencing Guideline ("USSG") § 3A1.1, which provides for a two-level enhancement of the base offense level when the crime involves a "vulnerable victim." For the reasons stated below, we vacate defendant's sentence on all counts of conviction and remand for resentencing.

I.

Defendant developed a scheme to obtain fraudulent tax refunds from the IRS. Defendant prepared individual income tax returns, either in his own name or in the name of a recruit, that claimed a false disproportionate withholding and a large refund, which the named taxpayer was not entitled to receive. Defendant attached fraudulent Form W–2, Wage and Tax Statements, to support the false returns and filed the returns with the IRS.

On May 6, 1992, defendant was charged in a seven-count indictment for conspiring to

defraud the IRS (Count I) and for making false claims against the United States (Counts II–VII). In connection with the conspiracy, the government alleged defendant prepared, caused to be prepared and caused to be signed and filed returns in the names of Carol Bass, Clara Garrett, James Donaldson, Kevin C. Payne, Tina M. Keith, Tonya M. Wallace and in his own name. The substantive counts included claims filed in defendant's name (Counts II and VI), and in the names of Kevin C. Payne (Count III), Tina M. Keith (Count IV), Tonya M. Wallace (Count V), and James Donaldson (Count VII).

Defendant was convicted by a jury on all counts. The court sentenced defendant to concurrent fifty-one month terms on Counts I, VI and VII, which were post-Guidelines offenses, pursuant to the Guidelines. On the remaining counts, all pre-Guidelines offenses, defendant was sentenced to fifty-one month sentences on each, to be served concurrently with each other and with Counts I, VI and VII. Defendant timely appealed.

## II.

■ Defendant's sole issue on appeal is whether the District Court erred in applying USSG § 3A1.1 to enhance defendant's base offense level. We review the District Court's application of the Sentencing Guidelines *de novo*, and its supporting factual findings for clear error. *United States v. Muhammad,* 948 F.2d 1449, 1455 (6th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1239, 117 L.Ed.2d 472 (1992). Section 3A1.1 provides:

*Vulnerable Victim*

If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels.

The enhancement is not to be applied "if the offense guideline specifically incorporates this factor." USSG § 3A1.1, comment. (n. 2). Section 2F1.1, the offense guideline used for offenses involving fraud or deceit, as in this case, does not incorporate the vulnerability of the victim of the offense.

In a sentencing memorandum, the government argued that the enhancement under section 3A1.1 should be applied as "[d]efendant chose those that he victimized by this scheme because they were particularly vulnerable in some way." In its attempt to prove vulnerability, the government continued:

Tina Keith testified that at the time defendant recruited her she was very young, only eighteen years old. Kevin Payne was only nineteen years old at the time that defendant convinced him to participate. Moreover, Payne was a full-time college student in need of money. Carol Bass testified that at the time that she signed "papers" at defendant's instruction, she was down and out and needed money. Additionally, defendant abused his position of trust with regard to Bass. Bass testified that when she was a child, defendant was her park leader. Defendant used his influence over her to get her to sign papers without letting her know what it was that she was signing, because he knew that she trusted him. Finally, Clara Garrett testified that at the time that she signed papers at defendant's request she was depressed and in bed, despondent over her father's recent death. Moreover, both Carol Bass and Clara Garrett were dependent upon public assistance. Defendant manipulated these individuals, preying on their vulnerabilities in recruiting them to his scheme and therefore the Court should increase his offense level. . . .

Gov't Sentencing Memo at 9–10. The sentencing court agreed with the government's position and applied the two-level enhancement.

Defendant's argument on appeal is twofold. First he argues that Bass, Garrett, Keith and Payne are not victims for purposes of section 3A1.1 because (1) there is no nexus between the alleged harm suffered and defendant's offense of conviction; and (2) they each bear some level of culpability for the crimes. Second, even if considered victims, they were not "unusually vulnerable" or "particularly susceptible to the criminal con-

duct." On appeal, the government concedes that Keith and Payne are not victims for purposes of section 3A1.1, Gov't Br. at 10, and focuses its argument on Bass and Garrett.

### A. Nexus

█ We find merit in defendant's argument that section 3A1.1 is applicable only where the alleged victim is a victim of a defendant's offense of conviction. Section 3A1.1 may be invoked where a "victim of the offense" is "unusually vulnerable" or "otherwise particularly susceptible to the criminal conduct" and a defendant selects a victim based upon this knowledge. An early version of the commentary accompanying section 3A1.1 provided that the adjustment applied to "any offense where the victim's vulnerability *played any part* in the defendant's decision to commit the offense." USSG § 3A1.1, comment. (n. 1) (effective November 1, 1987) (emphasis supplied). This note was subsequently amended to read as follows: "This adjustment applies to offenses where an unusually vulnerable victim is made a target of criminal activity by the defendant." *Id.* (effective November 1, 1989).

Other courts have held that a nexus is not required. *United States v. Yount,* 960 F.2d 955, 958 (11th Cir.1992) ("'vulnerable victim' provision does not require a vulnerable victim who is a victim of the offense of conviction"); *United States v. Roberson,* 872 F.2d 597 (5th Cir.), *cert. denied,* 493 U.S. 861, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989). The *Roberson* court relied upon the 1987 commentary; and the *Yount* court relied upon the *Roberson* decision in support of its holding, despite the change in the commentary. Whether the amendment narrowed the definition of "victim" for purposes of section 3A1.1 or whether it simply clarified its meaning, we hold that the language of section 3A1.1 itself requires that individuals targeted by a defendant be victims of the conduct underlying the offense of conviction.

█ The decision of the Supreme Court in *Hughey v. United States,* 495 U.S. 411, 110 S.Ct. 1979, 109 L.Ed.2d 408 (1990), is instructive of what is meant by "victim of an offense." The Victim and Witness Protection Act (the "VWPA"), 18 U.S.C. §§ 3663, 3664, provides, inter alia, that a federal court may order "a defendant convicted of an offense" [1] to "make restitution to any victim of such offense." 18 U.S.C. § 3663(a)(2). The VWPA contains no definition of "victim." The Supreme Court has held the VWPA covers only victims who are harmed by the defendant's conduct that is the basis of the offense of conviction. *Hughey,* 495 U.S. at 413, 110 S.Ct. at 1981. In reaching this conclusion, the Court stated:

> [A] straightforward reading of the provisions indicates that the referent of "such offense" and "an offense" is the offense of conviction.... [T]he repeated focus in [section 3663] on the offense of which the defendant was convicted suggests strongly that restitution as authorized by the statute is intended to compensate victims only for losses caused by the conduct underlying the offense of conviction.

*Id.* at 416, 110 S.Ct. at 1982. This reasoning is consistent with our conclusion that section 3A1.1's adjustment may be applied only when a victim is harmed by a defendant's conduct that serves as the basis of the offense of conviction. Thus, for purposes of both the VWPA and section 3A1.1, a "victim" is one who is harmed by the conduct underlying the offense of conviction.

█ Defendant was convicted of conspiracy to defraud the IRS and of making false claims against the United States. The government argues that defendant's crime claimed three victims: the IRS, Bass, and Garrett. The harm to Bass and Garrett is alleged by the government to be the fact that they were: (1) made instrumentalities of defendant's crime; and (2) subjected to the risk of criminal prosecution. Bass was further harmed because she lost $600 due to her involvement with defendant.[2] We believe

---

1. Covered offenses are limited to those under the VWPA and specifically enumerated subsections of section 902 of the Federal Aviation Act of 1958, 49 U.S.C. § 1472.

2. Bass received $2,000 of the approximately $8,000 tax refund she fraudulently claimed. The IRS withheld a total of $2,600 from subsequent refunds.

that while Bass and Garrett may have been "victimized" by Wright in the sense that he may have taken advantage of them, we do not believe that they were victims of the offense. Crimes often have ringleaders but that does not make those joining them in the criminal activity victims of the crime. The determination of who are victims hinges upon the elements of the offense, which in this case are conspiring to defraud and defrauding the federal government by presenting false or fictitious claims. The payment of false claims harms the U.S. Treasury, and therefore, all federal taxpayers; it does not harm co-conspirators to the offense, such as Bass and Garrett. We hold that Bass and Garrett are not victims of defendant's fraud on the IRS.[3]

## B. Relevant Conduct

■ Some courts have held that a defendant's harmful criminal conduct towards another that is not a part of an offense of conviction may be considered by a sentencing court under the relevant conduct provision of the Guidelines, USSG § 1B1.3, to support a section 3A1.1 enhancement. *Yount,* 960 F.2d at 957–58; *United States v. Smith,* 930 F.2d 1450, 1455 (10th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991); *Roberson,* 872 F.2d at 608–09. Under this provision,

*Unless otherwise specified,* ... adjustments in Chapter Three [including section 3A1.1], shall be determined on the basis of the following:

(1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant;

. . . .

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

. . . .

(3) all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above. . . .

USSG § 1B1.3(a) (emphasis supplied). In determining that the relevant conduct provision was applicable to its decision to apply the victim-related adjustment, the *Roberson* court made reference to the commentary to section 1B1.3, which provides that "conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable Guideline Sentencing range." *Roberson,* 872 F.2d at 608–09 (quoting USSG § 1B1.3, comment. (backg'd)). The *Yount* court reached the same conclusion, but noted in passing that "arguably, where language in Chapter Three of the guidelines specifically is limited to victims of the offense, relevant conduct cannot be applicable." *Yount,* 960 F.2d at 957. The *Yount* court did not further analyze this issue.

We decline to follow this line of cases as section 3A1.1 "otherwise specifies" certain restrictions to its application. Relevant commentary to section 1B1.3, which is not mentioned in either *Roberson* or *Yount* provides that "[s]ubsection (a) establishes a rule of construction by specifying, *in the absence of more explicit instructions in the context of a specific guideline,* the range of conduct that is relevant to determining the applicable offense level. . . ." USSG § 1B1.3, comment. (backg'd) (emphasis supplied). In light of our holding that the victim-related adjustment of section 3A1.1 applies only in cases where there is a victim of the offense of conviction, we further hold that a court cannot apply the adjustment based upon "relevant conduct" that is not an element of the offense of conviction. Section 1B1.3 has no application in a section 3A1.1 adjustment.

In sum, we conclude that Bass and Garrett are not "victims" for purposes of section 3A1.1 because they were not harmed by the offense of conviction. We therefore do not reach the issue of whether they were "unusually vulnerable" victims or whether they were victims "otherwise particularly suscepti-

---

**3.** As we conclude that Bass and Garrett are not victims of defendant's offense of conviction, we do not address defendant's argument that culpa-

ble parties to a crime may never be victims of such crime as a matter law.

ble to the criminal conduct." We do note that the court made no findings on this issue, it found only that they "were vulnerable people"; the court did not find that they were *unusually* vulnerable.

### III.

Our holding applies only to the Guidelines counts. However, we are advised that the court indicated its desire to sentence to concurrent terms on the Guidelines and non-Guidelines counts. Whether it will wish to do so in view of the lesser sentence in the Guidelines counts, we do not know. However, in view of that indication, we set aside the sentences on all counts and REMAND all counts for resentencing.