UNITED STATES of America, Plaintiff–Appellee,

v.

Ronald G. RITSEMA, Defendant–Appellant.

No. 93–1891.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 6, 1993.

Decided Aug. 4, 1994.

Timothy O'Shea (argued), Office of U.S. Atty., Madison, WI, for plaintiff-appellee.

Steven P. Means, Amy L. O'Brien (argued), Michael, Best & Friedrich, Madison, WI, for defendant-appellant.

Before KANNE, ROVNER, Circuit Judges, and CURTIN, District Judge.*

* The Honorable John T. Curtin, District Judge from the Western District of New York, is sitting by designation.

KANNE, Circuit Judge.

This is a case in which more care by the government at the plea agreement stage could have staved off an unnecessarily complex and unproductive sentencing. On October 21, 1992, a grand jury returned a two count indictment against Ronald G. Ritsema. Count I charged Ritsema, a convicted felon, with possessing two semi-automatic pistols and two rifles in violation of 18 U.S.C. § 922(g)(1). Count II charged Ritsema with possessing two unregistered silencers (which were attached to the barrels of the rifles referred to in Count I), in violation of 26 U.S.C. § 5861(d).

In entering into a plea agreement with Ritsema (which was in the form of a letter from the Assistant U.S. Attorney to defense counsel), the government, for some undisclosed reason, dropped Count I of the indictment in exchange for a guilty plea on Count II.[1] Because Count II charges Ritsema only with possessing two silencers which were not "registered to him in the National Firearms Registration and Transfer Record," the ultimate charge against Ritsema did not involve the possession of any actual weapons.

On the face of it, there was nothing unusual about the government's decision to drop the felon-in-possession of a firearm charge against Ritsema. A district court typically may accept such a plea agreement. Section 6B1.2(a) of the Federal Sentencing Guidelines states that "[i]n the case of a plea agreement that includes the dismissal of any charges ... the court may accept the agreement if the court determines, for reasons stated on the record, that the remaining charges adequately reflect the seriousness of

the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing." U.S.S.G. § 6B1.2(a), p.s. (Nov.1990).

The highly experienced district judge, in his statement of reasons for the sentence, specifically found that "the offense of conviction adequately represents the defendant's criminal conduct." He also withheld acceptance of Ritsema's plea agreement until after he had reviewed the presentence report. It thus would appear that the judge accepted the plea agreement because he believed that the unregistered silencers charge standing alone did adequately reflect the seriousness of Ritsema's actual offense.

However, the way in which the court applied the guidelines to Ritsema's conviction seemed to indicate otherwise. Rather than sentencing Ritsema simply for possession of the silencers, the court believed it was required by the sentencing guidelines to bring all of the criminal conduct *surrounding* Ritsema's gun possession[2] back in at the sentencing stage under the "Relevant Conduct" guideline, section 1B1.3. Much of this surrounding activity was, as a factual matter, only marginally connected to the possession of the unregistered silencers, as we will describe below. Notwithstanding this attenuation, the court believed it was required to apply a complex series of guideline provisions to Ritsema's unregistered silencer conviction, including ones for Obstruction of Justice and Criminal Sex Abuse. In the end, it held Ritsema accountable for criminal acts that could have been relevant conduct had Ritsema pled guilty to being a felon-in-possession of a firearm,[3] but that were unrelated to his

1. In response to the court's question at oral argument as to why the government agreed to drop the actual gun charge in exchange for a guilty plea on the unregistered silencer charge, the government explained that it "just picked that one."

2. The district court did not consider the gun possession *itself* as includable relevant conduct under section 1B1.3 of the guidelines, it only included criminal conduct in which Ritsema engaged that was *related* to the gun possession. Thus, the conduct the court considered was logically at least two steps removed from the silencer possession.

It would have been useless to consider the felon-in-possession of a weapon conduct under the relevant conduct provision, since the base offense level for that offense is lower than that for the silencer offense. A cross-reference is only warranted when it would yield a higher offense level. *See* U.S.S.G. § 2K2.1 (Nov. 1990).

3. For example, in *United States v. Mason*, 974 F.2d 897 (7th Cir.1992), we held that the district court properly cross-referenced from section 2K2.1 (Firearms) to sections 2X1.1 and 2A3.1 (Criminal Sex Abuse), where the defendant pled guilty to being a felon-in-possession of a weapon and used the gun in connection with a sexual assault.

possession of unregistered silencers. The district court sentenced Ritsema to the statutory maximum, 120 months in prison. Ritsema now appeals his sentence.

## BACKGROUND

### A. The State Prosecution

To examine Ritsema's sentence, we must first set out the events leading up to a Wisconsin state criminal prosecution which in turn gave rise to the prosecution of this case. Ritsema was already a felon, having been convicted of both second degree sexual assault and child abuse in 1984. On September 9, 1991 a mentally retarded fourteen year old girl, K.J.L., reported to Janesville police that Ritsema, her sixty-two year old next door neighbor, had sexually assaulted her the day before. K.J.L. told police that sexual behavior between her and Ritsema had been escalating ever since her family moved next door to him in June 1991. She described how, in July and August 1991, Ritsema had befriended her, and then induced her to perform sexual acts on him as he viewed pornographic material. She related that on September 8, she went to Ritsema's trailer for breakfast, and that he took her into his bedroom and had oral and vaginal intercourse with her.

Based on K.J.L.'s information, Janesville police obtained and executed a search warrant for the pornographic materials she alleged were in Ritsema's trailer. During the search, police found 64 sexually explicit magazines in Ritsema's spare bedroom. More importantly to this case, however, the police also found in Ritsema's possession four weapons, including two rifles equipped with homemade silencers, which he stored in his bedroom closets.

To aid the prosecution, K.J.L. made a formal statement describing in greater detail Ritsema's involvement with her. She wrote that Ritsema bought her gifts in order to lure her into engaging in sexual activities with him. Her statement also indicated that

on September 8, after having sexually assaulted her, Ritsema brought K.J.L. to one of his bedroom closets, and showed her a gun with a silencer on it. He told her, "if you tell anybody a lot of people will get hurt."

State prosecutors charged Ritsema with possession of firearms by a felon and sexual assault to a child. Ritsema pled guilty to one count of sexual contact with a person under the age of sixteen, and the Rock County Circuit Court sentenced him to ten years imprisonment. The firearm charge was referred for federal prosecution, resulting in the two count indictment in this case.

### B. Sentencing in Federal Court

After Ritsema pled guilty to the silencer charge in this case, a probation officer prepared a presentence report for the court, interviewing both Ritsema and K.J.L. The district court relied upon this presentence report, as well as upon the probation officer's testimony at the sentencing hearing, to make factual findings.

First, the court found that Ritsema did take K.J.L. to one of his bedroom closets, threaten her with a silencer-equipped weapon, and warn her that he would harm "a lot of people" if she came forward about his repeated sexual assaults on her. Next, the court found that K.J.L. was actually intimidated by Ritsema's threats. Lastly, the court found that K.J.L. was a vulnerable person due to mental retardation.

Using the guidelines effective November 1990, the court proceeded to calculate Ritsema's sentence by first determining his base offense level. We observe here as an aside that although silencers are defined as "firearms" in 26 U.S.C. § 5845(a), they are not actual weapons. They cannot be fired or discharge projectiles. They are merely devices designed to attach to the barrel of a handgun or rifle in order to muffle the sound made when the weapon is discharged.[4]

---

4. The Fifth Circuit has noted, in a slightly different context, that "the possession of an unregistered silencer and the unlawful possession of a pistol by a felon involve two distinct harms and different societal interest," meriting distinct treatment under the guidelines. *United States v. Pope*, 871 F.2d 506, 509–10 (5th Cir.1989) (refus-

ing to group a silencer charge and felon-in-possession charge together as "closely-related counts" under § 3D1.3). *Cf. United States v. Bruder*, 945 F.2d 167 (7th Cir.1991) (en banc) (6–5 court distinguishing *Pope*). The *Pope* court further noted that although a silencer "screws onto [a] pistol," the mere "physical connection"

However, because a silencer is a "firearm" for the purposes of 26 U.S.C. § 5845(a), the court correctly applied guideline section 2K2.1, (Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition). Subsection (a)(1) of the guideline set the base offense level for Ritsema's violation at 18. However, subsection (c)(2) provided that where the defendant "used or possessed the firearm in connection with commission . . . of another offense," the court is to cross-reference to section 2X1.1 (Attempt, Solicitation, or Conspiracy) to establish the base offense level.

The court determined that Ritsema had used "firearms with silencers" in connection with the commission of obstruction of justice, because Ritsema had tried to avoid detection of his misdeeds by using a rifle to threaten K.J.L. into keeping quiet. The court did not discuss how the silencer itself was instrumental in effectuating Ritsema's threats, nor did it find that K.J.L. knew that a silencer was attached to the rifle at the time of the threats. Nevertheless, the court determined that it was required to cross-reference to section 2X1.1. Section 2X1.1(a) instructed the court to consult yet another guideline— "the guideline for the substantive offense"— for the proper base offense level.

Because the substantive offense Ritsema allegedly committed with his unregistered silencers was obstruction of justice, the court looked to section 2J1.2 to determine the base offense level. The court, however, was not permitted to stop there. Subsection (c) of that guideline commanded the court once again to cross-reference. This time the court was directed to consult section 2X3.1 (Accessory After the Fact) for the base offense level, because the defendant "obstruct[ed] the investigation or prosecution of a criminal offense."

Section 2X3.1 instructed the district court to establish the appropriate base offense level at "6 levels lower than the offense level for the underlying offense." The court determined that the offense underlying the obstruction of justice was criminal sexual abuse.[5] Section 2A3.1 (Criminal Sexual Abuse) established a base offense level of 27. The court additionally found that Ritsema had committed the sexual abuse by means of the display of a dangerous weapon; therefore, it increased Ritsema's base offense level by 4 points pursuant to section 2A3.1(b)(1). The court further increased Ritsema's base offense level by 2 points under section 2A3.1(b)(2), because his victim was under age 16. Leaving section 2A3.1 with a subtotal of 33 points, the court then subtracted 6 points as instructed by 2X3.1, arriving at a base offense level of 27.

Next, the court considered Chapter Three adjustments to Ritsema's base offense level. The court added two points pursuant to section 3A1.1 (Vulnerable Victim), because K.J.L. was "not only . . . less than 16, she was mentally retarded. . . ." Next, the court declined to give Ritsema a downward adjustment of 2 points for Acceptance of Responsibility (section 3E1.1), because (1) Ritsema continually denied having threatened K.J.L. with a silencer-equipped gun, (2) he attempted to obstruct justice, and (3) he did not manifest his acceptance of responsibility in a timely fashion.

The court then determined that with an adjusted offense level of 29 and a Criminal History Category of II, Ritsema's sentence range was 97–121 months, limited by the statutory maximum sentence of 10 years. The court sentenced Ritsema to the maximum 120 months in prison, to run concurrently with the ten year statutory rape sentence in Wisconsin.[6]

does not mandate that the two are "'closely related' within the meaning of the Guidelines." *Pope*, 871 F.2d at 509.

5. Ritsema was convicted of statutory rape in Wisconsin. The district court in this case determined by a preponderance of the evidence at sentencing that Ritsema had forcibly raped K.J.L.; otherwise, it would have applied section 2A3.2 (Criminal Sexual Abuse of a Minor).

6. We are at a loss to understand why the government bothered to prosecute Ritsema federally, then dismiss the substantive felon-in-possession charge against him, and concur with the probation office's recommendation that Ritsema's sentence run concurrently with his state sentence.

Counsel informs us that Ritsema would be eligible for parole in Wisconsin after having served ⅔ of his state sentence. As the result of the ten year federal sentence, Ritsema has re-

*DISCUSSION*

## A. Standard of Review

■ We review the district court's sentencing determinations under two standards. We will not reverse factual determinations underlying the application of the guidelines unless they are clearly erroneous. *United States v. Gio*, 7 F.3d 1279, 1289 (7th Cir. 1993). "A question involving the interpretation of a Guidelines term, by contrast, is a matter of law subject to *de novo* review." *Id.* (citations omitted).

## B. Relevant Conduct

### 1. *The Relevant Conduct Guideline*

This case ultimately pivots on whether, in sentencing Ritsema for the possession of silencers, the district court was required to include Ritsema's obstruction of justice conduct in its calculations as if it were sentencing Ritsema for a weapon possession offense. The court's first cross-reference away from the silencer guideline triggers the rest of the long series of subsequent cross-references and enhancements.

■ The guidelines authorize the court to consider at sentencing some kinds of behavior outside of the behavior constituting the defendant's charge-offense.[7] Several of the ways in which the guidelines direct the court to consider conduct outside of the charge-offense is through cross-references among the offense guidelines themselves, Chapter Three adjustments, and the Relevant Conduct provision in Chapter One. *See generally* U.S.S.G. Ch. 1, Pt. A intro. p.s.4.

■ More specifically, the Relevant Conduct guideline (section 1B1.3) is a general application principle that governs both cross-references in Chapter Two offense guidelines and offense level adjustments in Chapter Three, provided those sections do not specify

to the contrary. Section 1B1.3 states, in pertinent part:

(a) ... Unless otherwise specified, ... cross-references in Chapter Two, and [ ] adjustments in Chapter Three, shall be determined on the basis of the following:

(1) all acts and omissions committed ... by the defendant, ... that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3) all harm that resulted from the acts or omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts or omissions....

According to one authority, the Relevant Conduct guideline constitutes a "cornerstone of the federal sentencing guideline system," by "embody[ing] a number of critical policy choices" the Sentencing Commission made in promulgating the guidelines. William W. Wilkins, Jr. & John R. Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines*, 41 S.C.L.Rev. 495 (1990). The Relevant Conduct provision is seen as one of the guidelines' main vehicles for introducing real-offense principles into what is predominantly a charge-offense sentencing system. *See United States v. Masters*, 978 F.2d 281, 284–85 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2333, 124 L.Ed.2d 245 (1993) (listing sources). The goal of including relevant conduct in sentencing is to allow a court to reflect in its sen-

---

ceived a little over three additional years of imprisonment for all the federal courts' trouble. Were the district court able to sentence Ritsema simply for the silencer possession, then order the sentence to run consecutive to the state sentence, Ritsema would have received nearly the same amount of federal time, without the need for the sentencing complexities in this case.

7. There are, however, limits to the kinds of conduct the court can consider. *See, e.g., United States v. Sykes*, 7 F.3d 1331 (7th Cir.1993) (holding that uncharged offense did not constitute relevant conduct under 1B1.3(a)(2) because offense was not similar, temporally proximate, or regular enough to be part of common plan).

tence the actual seriousness of an offense, instead of strictly limiting it to the charge the prosecutor names in the indictment.

We now turn to look at whether the cross-referencing provision of section 2K2.1, and the Chapter Three adjustments for Vulnerable Victim and Acceptance of Responsibility preclude the application of the Relevant Conduct guideline, and if not, whether Ritsema's obstruction of justice conduct constitutes relevant conduct justifying a cross-reference or an adjustment.

### 2. Chapter Two Cross–References

As we have mentioned, section 2K2.1 sets the base offense level for Ritsema's silencer conviction at 18. Its cross-reference provision, however, authorizes a court to set the base offense level higher "if the defendant used or possessed the firearm in connection with commission or attempted commission of another offense. . . ." The district court concluded that because Ritsema threatened K.J.L. with a rifle that had a homemade silencer attached to it, he therefore possessed an unregistered silencer "in connection with" the obstruction of justice.

Admittedly, section 2K2.1's "in connection with" language does not precisely track the language of the Relevant Conduct guideline. However, the commentary to section 1B1.3 states that "[s]ubsection (a) establishes a rule of construction by specifying, in the absence of *more explicit instructions* in the context of a specific guideline, the range of conduct that is relevant to determining the applicable offense level . . ." U.S.S.G. § 1B1.3, comment. (backg'd) (emphasis added). We do not believe that section 2K2.1's vague instructions to consider only that conduct committed "in connection with" the firearm possession are any more specific than the dictates of the Relevant Conduct provision. Therefore, we cannot say that section 2K2.1 precludes the application of the Relevant Conduct guideline. *See United States v. Corbin,* 998 F.2d 1377 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1124, 127 L.Ed.2d 432 (1994) (referring to the Relevant Conduct guideline to inform interpretation of cross-reference provision of section 2K2.1).

██ Regardless of whether we consider the district court's inclusion of Ritsema's obstruction of justice conduct under the rubric of the "in connection with" language of section 2K2.1(c)(2) or the Relevant Conduct provision, however, we believe that it was error for the district court to cross-reference from section 2K2.1 for obstruction of justice, because the act of threatening K.J.L. bore a too attenuated connection with the mere possession of silencers themselves to be includable.

First, although the silencer was physically connected to the barrel of the rifle with which Ritsema threatened K.J.L., we do not believe the silencer was used "in connection with" the threats under section 2K2.1(c)(2). *Cf. United States v. Pope,* 871 F.2d 506, 509 (5th Cir.1989) (rejecting the claim that the "physical connection" between a silencer and gun "mandates a finding that the two offenses are 'closely related' within the meaning of the guidelines"). It is unclear whether K.J.L. even knew at the time of the threats that there was a silencer attached to the rifle. Moreover, there is no evidence that Ritsema threatened K.J.L. with the silencer itself, for instance by telling her he could kill her soundlessly so that no one would detect her murder. As the silencer alone cannot cause injury, nor does the device itself look like a weapon, we believe that under the facts of this case, the silencer could not have been used in connection with threatening K.J.L. to obstruct justice. The silencer was altogether immaterial to the effectiveness or quality of Ritsema's threats to K.J.L.

Next, we do not believe that the Relevant Conduct provision supports the decision to cross-reference. The government argues with regard to Ritsema's Chapter Three adjustments that "included within relevant conduct are 'all acts or omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction,' as well as all harm that resulted from, or was the object of, the offense of conviction," citing sections 1B1.3(a)(2) and (3).

██ The deficiency of the government's argument is equally apparent in the application of the Relevant Conduct guideline to the court's 2K2.1 cross-reference as it is to its Chapter Three enhancements. Section

1B1.3(a)(2) cannot be read to make Ritsema's obstruction of justice conduct relevant to his silencer offense because by its terms, it applies *only* to offenses which would be grouped as multiple counts under section 3D1.2(d). Section 3D1.2(d) neither lists offenses under 2K2.1 (Firearms) nor those under 2J1.2 (Obstruction of Justice) as the kind of offenses that are required to be grouped together. Moreover, it is evident that Ritsema's unregistered silencers and his obstruction conduct have completely different "victims" or "harms," and thus are inappropriate for grouping under 3D1.2(d). Possession of unregistered silencers is a "victimless crime," prohibited to "protect[ ] society from the indiscriminate availability of firearms." *See United States v. Bruder,* 945 F.2d 167 (7th Cir.1991) (en banc); *Pope,* 871 F.2d at 509–10. Obstruction of justice is an offense involving interference with the administration of the federal criminal justice system. *See* U.S.S.G. § 2J1.2, comment. (n. 1) & (backg'd.)

Likewise, subsection (a)(3) of 1B1.3 does not operate to make Ritsema's obstruction behavior relevant conduct either. The threats to K.J.L. were not a "harm that resulted" from the possession of the unregistered silencer, nor were they a "harm that was the object" of the possession. As we noted earlier, Ritsema did not and could not plausibly have carried out his threats against K.J.L. with the silencers alone. He was able to intimidate K.J.L. because of the *rifle,* to which the silencer was attached. Possession of the silencer itself resulted in no harm to K.J.L.

If Ritsema's obstruction conduct is to be deemed conduct relevant to the silencer possession under section 1B1.3, then, it must fall under subsection (a)(1). That subsection presents four discrete conditions under which Ritsema's obstruction conduct may be deemed relevant. Subsection (a)(1) includes all acts or omissions by the defendant that (1) occurred during the commission of the charge-offense, (2) was in preparation for committing it, (3) was done in an attempt to hide the offense, or (4) was otherwise done in furtherance of it.

The threats to K.J.L. were not in any way done in preparation for the silencer possession, or to avoid detection of it, nor were they done "in furtherance" of the silencer possession. Therefore, Ritsema's obstruction conduct does not fall under conditions (2), (3), or (4) above.

We recognize, however, that Ritsema's threats were contemporaneous with the silencer possession, and thus, under a strict literal interpretation of section 1B1.3(a)(1), may be considered relevant conduct under condition (1). *See, e.g., Masters,* 978 F.2d at 284–85 (stating that a murder that occurred during the course of a racketeering conspiracy constituted relevant conduct under 1B1.3(a)(1)). Nevertheless, we believe that in this case such a construction of section 1B1.3 would lead to untenable results, and twist in an unintended way the guidelines' attempt to introduce real-offense principles through the Relevant Conduct provision.

"It is a familiar rule, that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit, nor within the intention of its makers. This has been often asserted and the reports are full of cases illustrating its application. This is not the substitution of the will of the judge for that of the legislator, for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act."

*Holy Trinity Church v. United States,* 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892). *See also Public Citizen v. United States Dep't of Justice,* 491 U.S. 440, 454–55, 109 S.Ct. 2558, 2566–67, 105 L.Ed.2d 377 (1989) ("Looking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress' intention...."); *Green v. Bock Laundry Mach. Co.,* 490 U.S. 504, 527–28, 109 S.Ct. 1981, 1994, 104 L.Ed.2d 557 (1989) (Scalia, J.,

concurring) (absurd results and contrary legislative intent may justify departure from ordinary meaning of statute).

■ We do not believe that holding Ritsema's obstruction of justice conduct relevant to his possession of unregistered silencers is consistent with the policies that underlie the Relevant Conduct provision. Real-offense sentencing aims to take into account the actual seriousness of the charge-offense. Its goal is to free the court from the strict confines of the indictment so that it may hold the defendant accountable for the full range of harms that stemmed from his offense conduct. Specifically, the Relevant Conduct provision contains a "temporal dimension, focusing on the totality of a defendant's conduct from the planning stages of the offense to the post-offense behavior. . . ." William W. Wilkins, Jr. & John R. Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines*, 41 S.C.L.Rev. 495 (1990). "A temporal analysis focuses on offense conduct as a moving picture. . . . Although the actual commission of an offense brings the defendant before the court, the sentence imposed should also reflect conduct both preparatory and subsequent to the offense in order to be consistent with the purposes of sentencing." *Id.*

■ Thus, the Relevant Conduct provision directs a court to sentence a defendant for uncharged conduct germane to the charge-offense by authorizing it to consider events before, during, and after the offense conduct. The temporal dimension of relevant conduct, however, could not reasonably have been intended to cause a court to convert a single possession conviction into a sweeping tool to gather in all of the otherwise unrelated criminality of a defendant which occurred contemporaneously with the charge-offense.

If judges were required to read the Relevant Conduct provision in this fashion, absurd results would obtain, especially in the context of possession crimes. We can imagine that Ritsema possessed these silencers for a number of years, maybe even decades. If contemporaneousness with the charge-offense were all that was necessary to make an act relevant conduct, then had Ritsema also transmitted national defense information to aid a foreign government from his trailer home with his silencers in the closet, the court would have conceivably been required to cross-reference from section 2K2.1 to section 2M3.1 and set the base offense level at 37.

Perhaps such an extreme result is hypothetical, and we recognize that there are crimes that Ritsema could have committed in which the silencer could have been instrumental, and thus relevant conduct. Our point is only that the relevant conduct provision, interpreted in an overly broad manner, has the potential of being a coarse instrument capable of causing years of serious incidental criminality to ride in at sentencing on the coattails of a relatively minor conviction.

To a lesser extent that is what happened here, for as we have explained, Ritsema's silencers themselves had nothing to do with his obstruction of justice conduct. His unregistered silencer conviction became a springboard to his actual sentence for obstruction of justice and forcible rape. We decline to direct the district court to read the relevant conduct guideline as applied to the cross-reference provision of 2K2.1 in such an expansive way as to include wholly remote yet contemporaneous conduct, particularly when such a reading could have been avoided had Ritsema simply been charged with being a felon-in-possession of a weapon rather than with being in possession of unregistered silencers.

Therefore, we hold that upon the narrow facts of this case, Ritsema's obstruction of justice conduct was not relevant conduct under section 1B1.3, and that cross-referencing from section 2K2.1 to 2X1.1 was inappropriate. Because we hold that the first cross-reference the district court made away from section 2K2.1 was incorrect, we need not discuss Ritsema's contentions regarding the remainder of the district court's Chapter Two base offense level calculation.

### 3. Chapter Three Adjustments

The district court ruled on two Chapter Three adjustments in this case—it increased

Ritsema's offense level by two points under section 3A1.1 (Vulnerable Victim), and denied a two point reduction under section 3E1.1 (Acceptance of Responsibility).

#### a. Vulnerable Victim

■ Section 3A1.1 (Vulnerable Victim) provides that a court should increase a defendant's offense level by two points "if the defendant knew or should have known that a victim *of the offense* was unusually vulnerable due to age, physical or mental condition. . . ." (emphasis added). Ritsema argues that K.J.L. cannot be "a victim of the offense," because possession of unregistered silencers is a "victimless crime." Therefore, he concludes, no upward adjustment is appropriate under the Vulnerable Victim provision.

The district court's decision to increase Ritsema's offense level under section 3A1.1 was based not on the silencers themselves, but on the obstruction of justice conduct.[8] In *United States v. Wright*, 12 F.3d 70 (6th Cir.1993), the Sixth Circuit held that "section 3A1.1 is applicable only where the alleged victim is the victim of a defendant's *offense of conviction*." *Id.* at 73 (emphasis added). It reasoned that the relevant conduct provision of the guidelines did not govern section 3A1.1, because it read the language of 3A1.1 to specifically instruct courts to consider only a charge-offense in applying the section. *Wright* conflicts with an earlier Eleventh Circuit case, *United States v. Yount*, 960 F.2d 955 (11th Cir.1992). *Yount* held that a court may consider relevant conduct pursuant to section 1B1.3 when applying the Vulnerable Victim adjustment, implicitly holding that no language in section 3A1.1 precluded the operation of the relevant conduct provision. *Id.* at 957–58.

We need not decide the issue presented by *Wright* and *Yount*, for either approach would lead to the same result in this case. We have already stated that the possession of

silencers is a victimless offense, and therefore we agree with Ritsema that K.J.L. cannot be a victim of his charge-offense. Furthermore, given our holding that Ritsema's obstruction of justice was not relevant conduct for the purposes of Chapter Two calculations, we must deem Ritsema's obstruction conduct not relevant to the Chapter Three Vulnerable Victim adjustment either. Because the district court may not count the obstruction of justice conduct as relevant conduct, and K.J.L. is not the direct victim of Ritsema's possession of unregistered silencers, we conclude that the two point increase in this case was error.

#### b. Acceptance of Responsibility

■ Finally, we briefly note that section 3E1.1 (Acceptance of Responsibility) is also governed by the relevant conduct provision of the guidelines. *See United States v. White*, 993 F.2d 147, 151 (7th Cir.1993). Hence, in order for a sentencing court to grant a defendant a reduction of his offense level for acceptance of responsibility, a defendant must "clearly demonstrate[ ] a recognition and affirmative acceptance of personal responsibility for his criminal conduct," and all relevant conduct as well. In this case, Ritsema acknowledges his responsibility for the possession of the unregistered silencers, although he does deny ever having threatened K.J.L. or forcibly raping her. Because we have determined that Ritsema's obstruction of justice is not relevant conduct in this sentencing, Ritsema may have qualified for a reduction for acceptance of responsibility in this case, because he needed not accept responsibility for that behavior.

The record indicates that the district court based its denial of a reduction for acceptance of responsibility at least in part on Ritsema's refusal to accept responsibility for the obstruction of justice or the sexual assault. The court should therefore reconsider its

---

**8.** It is not altogether clear whether the court considered K.J.L. the vulnerable victim of Ritsema's threats or whether the court considered K.J.L. the vulnerable victim of Ritsema's sexual assault. The presentence report recommends a Vulnerable Victim enhancement because "the victim of the sexual assault is mentally retarded." P.S.R. at 7. The court, however, simply states

that K.J.L. was "particularly susceptible to the criminal conduct of this defendant . . ." Consistent with the record, the government concedes that Ritsema did *not* use any firearm while committing sexual assault; he used a weapon only to intimidate K.J.L. after the assaults had occurred. We therefore assume that the court considered K.J.L. the "victim" of the obstruction of justice.

section 3E1.1 determination upon resentencing.

## CONCLUSION

For the foregoing reasons, the sentence is VACATED and the case REMANDED for resentencing consistent with this opinion.