**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Horace A. BONDURANT, a/k/a Robert**
**Allan Bondurant, Defendant–**
**Appellant.**

**No. 93–6553.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 11, 1994.

Decided Nov. 9, 1994.

Joe A. Dycus (argued and briefed) and Cynthia J. Collins, Asst. U.S. Attys., Office of the U.S. Atty., Memphis, TN, for plaintiff-appellee.

Joseph S. Ozment (argued and briefed), Memphis, TN, for defendant-appellant and Horace A. Bondurant (briefed supplemental), pro se.

Before: KEITH and DAUGHTREY, Circuit Judges; and JOINER, District Judge.*

JOINER, District Judge.

Defendant Horace Bondurant appeals his sentence for fraudulent use of a social security number in violation of 42 U.S.C. § 408(a)(7)(B). Bondurant challenges the addition of two points to his base offense level for an offense involving a "vulnerable victim," and the court's order that he make restitution as a condition of special release. We affirm in part and reverse in part, and remand for resentencing.

## I.

### A.

Bondurant was issued a social security number in the name of Alan Bondurant in 1966. Bondurant's son, Robert Allen Bondurant, was born in 1973. Ten years later, Bondurant, using the name Robert Allan Bondurant, applied for a social security number for his son. The social security administration assigned number 415–41–3876 to the son and mailed a card to him at their residence. The son moved to his grandparents' home in August 1988, and was given his social security card at that time. The card had been signed by his father.

Bondurant's use of his son's social security number did not take place until four years after the card was issued. Using the name Robert Bondurant and his son's social security number, Bondurant opened an account with a furniture store in 1987, and obtained an American Express credit card in 1988. The accounts were closed with balances of $554 and $799, respectively. Finally, in March 1988, "Robert" Bondurant applied for a Discover Card, again using his son's social security number, and listing as a credit reference the American Express account he had opened weeks earlier. Bondurant was issued a card with a credit limit of $1000. By early June, the card had a balance of $4811.84, resulting from several cash advances, and

numerous charges at various K–Mart stores in amounts under $50.

All three lenders testified that they would not have issued the credit card or opened the account if they had known that the social security number used by Bondurant was not his. The government presented evidence that Bondurant used his own social security number in connection with employment with five employers between 1986 and 1989, and that Bondurant also used his own social security number in 1988 when he signed a form which allowed his son's grandparents to claim him as a dependent for income tax purposes.

Bondurant's use of his son's social security number did not come to light until 1992 when the son attempted to open a bank account and was refused due to a bad credit rating.

### B.

Bondurant was charged in a one-count indictment with fraudulent use of a social security number in violation of 42 U.S.C. § 408(a)(7)(B):

(a) **In general**

Whoever—

. . . .

(7) . . . for the purpose of obtaining anything of value from any person, or for any other purpose—

. . . .

(B) with intent to deceive, falsely represents a number to be the social security account number assigned by the Secretary to him or to another person, when in fact such number is not the social security account number assigned by the Secretary to him or such other person. . . .

. . . .

shall be guilty of a felony[.]

The indictment charged only Bondurant's use of his son's social security number to obtain the Discover Card. Bondurant was found guilty following a two-day jury trial.

* The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michi-

gan, sitting by designation.

A presentence report was prepared, and Bondurant filed an objection challenging the upward adjustment of his base offense level by 2 points for an offense involving a vulnerable victim, under U.S.S.G. § 3A1.1. The court adopted the presentence report's factual statement and recommendation with respect to this adjustment, and increased the base offense level by 2 points. Bondurant's total offense level was 12, which, with his criminal history category, resulted in a sentencing range of 15 to 21 months. Bondurant was sentenced to 20 months, to be followed by a three-year term of supervised release, a condition of which was restitution of the $4736.48 owed to Discover Card Services.

## II.

### A. Vulnerable Victim Adjustment

■ This court reviews applications of the sentencing guidelines de novo. *United States v. Hicks,* 4 F.3d 1358, 1360 (6th Cir. 1993). U.S.S.G. § 3A1.1 (1992) provides that if "the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels." U.S.S.G. § 3A1.1 (1992). The commentary explains that the guideline "applies to offenses where an unusually vulnerable victim is made a target of criminal activity by the defendant." U.S.S.G. § 3A1.1, comment. (n. 1).

In *United States v. Wright,* 12 F.3d 70, 73 (6th Cir.1993), the court construed the term "victim of the offense" to mean the person "harmed by a defendant's conduct that serves as the basis of the offense of conviction." The question in *Wright* was whether Wright's coconspirators, both of whom were induced by Wright to assist in his scheme to make false claims against the government, were vulnerable victims. While these individuals might have been *victimized* by Wright, they were not victims of the offense:

> The determination of who are victims hinges upon the elements of the offense, which in this case are conspiring to defraud and defrauding the federal government by presenting false or fictitious claims. The payment of false claims harms the U.S. Treasury, and therefore, all federal taxpayers; it does not harm co-conspirators to the offense....

*Id.* at 74. The court rejected the argument that a defendant's harmful conduct toward another that is not part of the offense of conviction may be considered under the relevant conduct provision of the guidelines, U.S.S.G. § 1B1.3. *Id.*

Sentencing in this case took place prior to *Wright,* and, as the district court noted, the law was not settled in this circuit as to the proper scope of the vulnerable victim enhancement. The presentence report justified application of the vulnerable victim enhancement on the grounds that Bondurant's relationship with his minor son allowed Bondurant to have access to his son's social security number. The presentence report also noted that the fraud was unlikely to be discovered until the son reached adulthood, and that even then, a child is unlikely to report his parent for criminal activity. Responding to defense counsel's objection to application of the enhancement, the addendum to the presentence report relied on the relevant conduct provisions of U.S.S.G. § 1B1.3. The response then recited the harm to the son which resulted from Bondurant's offense: a negative credit report, being required to obtain a new social security number, and being forced to testify against his father at trial. In the absence of a definitive ruling from this court, the district court adopted the presentence report's findings and recommendations, specifically finding that Bondurant targeted his son because of his age and his relationship.

■ Application of *Wright* to this case requires the conclusion that the victim of the offense of conviction was the issuer of Bondurant's Discover Card, not Bondurant's son. While the son might have been victimized by the offense, in the sense that he suffered collateral consequences, he was neither the victim nor the target of the offense of conviction. The elements of that offense required that the defendant (1) falsely; (2) represent a social security number to be his; (3) for the purpose of obtaining anything of value or for

any other purpose; (4) with intent to deceive. The entity to which Bondurant misrepresented his social security number was the Discover Card issuer, not his son. Likewise, the entity that relied on Bondurant's misrepresentation, and suffered direct financial harm as a result, was the Discover Card issuer. Bondurant's offense was complete with the commission of these acts, and did not require the use of a particular person's social security number, but only one not belonging to him. Consequently, it cannot be said that his son was a victim, whether vulnerable or not, of the offense of conviction. Bondurant's sentence therefore must be vacated, and the case remanded for resentencing based on an offense level not enhanced under U.S.S.G. § 3A1.1.

## B. Restitution Order

■ Bondurant inquired at sentencing whether restitution could be imposed in light of the fact that he was being sentenced to "almost the maximum." The court responded that restitution "can be ordered and has been." Other than Bondurant's brief question, no objection or fact-based challenge was made to the imposition of restitution. The court stated, however, that due to Bondurant's inability to pay, it would not impose a fine. Bondurant contends that the court erred in ordering restitution without making factual findings as to his ability to pay restitution, and that the court's order cannot stand in light of its determination that he could not pay a fine. Due to Bondurant's failure to object to the restitution order, review can be for plain error only.

Section 3664(d) of Title 18 sets forth the procedure applicable to restitution orders, and provides that while the burden of proving a victim's loss is on the government, "[t]he burden of demonstrating the financial resources of the defendant and the financial needs of the defendant and such defendant's dependents shall be on the defendant." In determining whether to order restitution and the amount to be repaid, the court must "consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the de-

fendant and the defendant's dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3664(a).

In *United States v. Blanchard,* 9 F.3d 22, 24–25 (6th Cir.1993), the court affirmed a restitution order, noting that the sentencing court acknowledged that it had reviewed the presentence report and, without further explanation, imposed an order of restitution. The court held that a sentencing court is not required to make factual findings regarding a defendant's ability to pay, and, further, that indigency is not a bar to a restitution order, because ability to pay is only one factor to consider in making a restitution determination.

■ While the district court did not make a specific finding regarding Bondurant's ability to make restitution to Discover Card Services, the court stated at sentencing that it "finds that the facts are as stated in the presentence report." The presentence report described Bondurant's financial condition, noting that Bondurant's 1993 bankruptcy petition listed liabilities of $4160.51 (contrary to the $25,100 Bondurant reported to probation), and that Bondurant reported monthly income of $925. The presentence report also noted that Bondurant had graduated from high school and had completed 132 credit hours at Memphis State University with a grade point average of 2.51. The presentence report indicated that Bondurant's employment record was spotty due to performance and attitude problems, but included 18 months of employment at a temporary agency just prior to his conviction.

Based on *Blanchard* and the record in this case, the district court clearly did not err in ordering restitution, even in light of its acknowledgement of Bondurant's inability to pay a fine. Bondurant's indigency was but one factor for the court to consider, and numerous salient facts justify the court's order; e.g., Bondurant's intelligence and relatively extensive academic background, and his likely ability to secure a job and repay the small amount at issue. In sum, we find no basis on which to disturb the court's restitution order, and affirm this aspect of Bondurant's sentence.

We **AFFIRM** the district court's restitution order, **REVERSE** the application of the vulnerable victim enhancement, and **RE-MAND** for resentencing.