In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2230

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

CURTIS D. TAYLOR,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:99 CR 160--Rudy Lozano, Judge.

Argued October 25, 2001--Decided December 3, 2001


  Before BAUER, POSNER, and EVANS, Circuit
Judges.

  EVANS, Circuit Judge.  Curtis D. Taylor
and his girl friend had the misfortune of
pulling up in an alley behind a drug
house in Gary, Indiana, at the same time
that federal agents on the Gary Response
Investigative Team (GRIT) were conducting
surveillance of the house. Taylor got out
of his automobile and entered a garage.
When the agents tried to stop him as he
came out of the garage, he ran. Captured
and arrested a few minutes later, he was
carrying a Glock 9 millimeter handgun
which, quite naturally, was confiscated.
Taylor was taken to GRIT headquarters
where he was shackled to the floor and
left alone in a room for several minutes.
He escaped by pulling a bolt loose from
the shackles.

  A week later, while Taylor was still on
the lam, a shooting occurred on
Washington Street in Gary. Although
Taylor denied it, three people identified
him as the shooter. He was found later
that day hiding under a bed in another
house where officers also found nine zip-
lock bags of crack cocaine.
  As a result of all this activity, Taylor
was charged in a four-count indictment.
The first two counts involve the events
of the first day behind the drug house.
In count 1, he was charged as an unlawful
user of a controlled substance in

possession of a firearm in violation of 18 U.S.C. sec. 922(g)(3). In the second count, he was charged with escape in violation of 18 U.S.C. sec. 751(a). For the events a week later, he was charged in count 3 with another firearms violation and in count 4 with possession with intent to distribute crack cocaine. He pled guilty to the first two counts; counts 3 and 4 were dismissed. He was sentenced to 110 months in prison.

Taylor appeals his sentence, focusing on the manner in which cross-references and "relevant conduct" provisions of the sentencing guidelines were applied to him. In short, the events surrounding the shooting were used to cross-reference from the firearms guideline to the attempted murder guideline, which then provided the offense level for Taylor's sentencing. The district court determined Taylor's base offense level by starting with U.S.S.G. sec.2K2.1(a), the firearms guideline applicable to this case based on his plea of guilty to count 1, giving him an offense level of 20. However, because the court also found that Taylor attempted the commission of another offense--the shooting a week later--the court cross-referenced from U.S.S.G. sec.2K2.1 to U.S.S.G. sec.2X1.1, which covers attempt, solicitation, or conspiracy. That guideline, in turn, contains a cross-reference providing that if an attempt, solicitation, or conspiracy is expressly covered by another guideline, the latter guideline should be applied according to its terms. U.S.S.G. sec.2X1.1(c). Having found that Taylor was the shooter a week after he escaped, the court concluded that the attempted murder guideline, U.S.S.G. sec.2A2.1, expressly covered the situation. Because the judge followed this trail from the guideline for firearms violations to the guideline for attempt and then to the guideline for attempted murder, Taylor's offense level rose to 28. Taylor attacks the court's findings of fact regarding his role in that shooting, and he disputes whether, in any event, his conduct on the day of the shooting, even if it were established, should have been considered at his sentencing.

In evaluating Taylor's claim, we review factual determinations underlying the application of the guidelines for clear

error. The interpretation of a guidelines term is a matter of law, subject to our de novo review. United States v. Gio, 7 F.3d 1279 (7th Cir. 1993).

The problem facing the government in defending Taylor's sentence is how to convince us that a connection exists between the attempted murder and the possession of the firearm that was confiscated from him one week earlier. The government concedes that the scope of the relevant conduct guideline does not allow a finding that the shooting is directly relevant to count 1--the possession of a firearm. That possession ended when the firearm was seized. The shooting had nothing to do with that offense. But to be effective in raising Taylor's offense level, the shooting must somehow be linked to the firearm count because the firearm guideline carries the larger base offense level, and it is the guideline with the cross-reference that ultimately leads to the attempted murder guideline.

The link, according to the government, is the escape. It argues that the escape is relevant conduct to the firearms charge. The argument transforms the escape, which we recall is a crime to which Taylor pled guilty, into "relevant conduct." The escape is said to be relevant conduct to the firearms violation because the escape was an attempt to avoid detection or responsibility for the firearms violation. The next step is characterizing the shooting one week later as relevant conduct to the escape. Finally, to complete the argument, it is necessary to say that the escape, which is relevant conduct to the firearms violation, brings with it the shooting, which is relevant conduct to the escape. This sleight of hand brings into play the cross-references in the firearms guideline which we have cited. Even with the link provided by the escape, the argument requires going from the firearms charge to the escape to the attempted murder and then leaping back over the escape to connect the attempted murder to the firearms charge. This is asking too much.

As we pointed out in United States v. Ritsema, 31 F.3d 559 (7th Cir. 1994), the relevant conduct guideline plays a very

important role in the guideline sentencing scheme. It is the means by which real-offense principles are inserted into what is otherwise a charged-offense system. The goal in including relevant conduct in sentencing considerations is to allow the sentence to reflect the seriousness of an offense rather than being limited by the specific charge set out in the indictment. For that reason, in calculating a proper sentence, the guidelines permit the court to consider certain conduct with which the defendant has not been charged. One way uncharged conduct is considered is through cross-references among the guidelines. The general principle which controls whether a cross-reference is ap propriate is the relevant conduct guideline in U.S.S.G. sec.1B1.3. As pertinent to this case, relevant conduct includes acts caused by the defendant which "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." This provision is pivotal to Taylor's sentencing. But there are limits to how far the provisions can be pushed.

One of the premises underlying the government's position is that "under the plain language of sec.1B1.3 [the relevant conduct guideline], Taylor was liable for every act he committed during the course of his escape." This premise is faulty. "Relevant" must have meaning under U.S.S.G. sec.1B1.3, even when the charge is escape. It is true that escape under sec. 751(a) is a continuing offense. United States v. Bailey, 444 U.S. 394 (1980). However, we cannot conclude that every crime committed during the time a person is on escape status automatically becomes relevant conduct in regard to a crime committed before the escape. The relevant conduct guideline is "not without limits." United States v. Crockett, 82 F.3d 722, 729 (7th Cir. 1996). We cautioned in Ritsema that "the relevant conduct provision, interpreted in an overly broad manner, has the potential of being a coarse instrument capable of causing years of serious incidental criminality to ride in at sentencing on the coattails of a relatively minor conviction." At 567.

Ritsema, in fact, involved a sentencing

even more convoluted than Taylor's. Ritsema had been charged with possession of semi-automatic pistols and the possession of silencers. In a move which caused a good deal of trouble, the government entered into a plea agreement with Ritsema in which he pled guilty to possession of a silencer, and the count alleging possession of the firearms was dropped. The facts of the case as found by the court showed that Ritsema had taken a mentally retarded 14-year-old girl into a closet and threatened her with a silencer-equipped weapon, saying that if she revealed his repeated sexual assaults on her, he would harm a lot of people. At sentencing, the court began with the guideline for unlawful possession of a firearm (a silencer is a firearm for sentencing purposes). Then the court looked to the cross-reference that covers the use or possession of the firearm in the commission of another offense, thus arriving at the attempt, solicitation, or conspiracy guideline. From there, the court cross-referenced to the guideline covering the use of a firearm in the obstruction of justice; next to the guideline dealing with accessories after the fact, and finally to the offense underlying the particular obstruction of justice--criminal sexual abuse by means of the display of a dangerous weapon. Not surprisingly, we rejected this reasoning and the claim that criminal sexual abuse was somehow relevant conduct to the possession of a silencer when there was no evidence that, unlike the firearm itself, the silencer was in any way used to facilitate the sexual abuse. That was true even though the defendant committed the sexual abuse contemporaneously with his possession of the silencer.

In our case, the shooting was not related to the escape. It would have been related if, for instance, Taylor shot at an officer who was trying to catch him. Nor was the shooting part of an attempt to escape detection: Taylor was not trying to silence someone who was planning to inform authorities of his whereabouts. As far as we can tell, Taylor shot at a man who had in some way injured his girl friend. The shooting was not related to any attempt to avoid detection for the escape. In fact, as Taylor points out, if anything, by the shooting Taylor called attention to

himself, and he was, in fact, quickly apprehended after he pulled the trigger.

Another problem with the sentence calculation is that even were we to find that the shooting was relevant conduct to the escape, it would be far too long a stretch to connect it to the firearms charge. As we have said, in Taylor's case the offense carrying the higher offense level is the firearms charge. It is the guideline for this offense which includes the cross-reference which leads to the attempted murder guideline. Even if the government could establish that the shooting was relevant conduct to the escape, nothing would be gained because the guideline for escape does not include a cross-reference which would allow sentencing on the basis of attempted murder. Naturally, then, it is the firearms charge which the government wants to connect to the shooting. But the hard fact is that the government can't get there from here. There is no principled way to bridge the gap between the firearms charge and the shooting.

Accordingly, the sentence of Curtis D. Taylor is VACATED and the case is REMANDED for resentencing.