UNITED STATES of America, Appellee,

v.

Brian K. SCHULTZ, Defendant, Appellant.

No. 92–1152.

United States Court of Appeals, First Circuit.

Submitted July 17, 1992.

Decided July 22, 1992.

Rehearing and Suggestion for Rehearing En Banc Denied Aug. 24, 1992.

Warren C. Nighswander and Sulloway, Hollis & Soden, Concord, N.H., on brief, for defendant, appellant.

Jeffrey R. Howard, U.S. Atty., and Peter E. Papps, First Asst. U.S. Atty., Concord, N.H., on brief, for appellee.

Before TORRUELLA, SELYA and CYR, Circuit Judges.

CYR, Circuit Judge.

Appellant Brian Schultz pled guilty to one count of distributing child pornography, *see* 18 U.S.C. § 2252(a)(2), and one count of conspiring to (1) transport child pornography in interstate commerce (18 U.S.C. § 2252(a)(1)), (2) transport obscene matter in interstate commerce (18 U.S.C. § 1465), (3) use a common carrier to transport obscene matter (18 U.S.C. § 1462(a)), and (4) receive and possess obscene matter while engaged in the business of transferring obscene matter (18 U.S.C. § 1466(a)), in violation of 18 U.S.C. § 371. Schultz challenges the offense level enhancements

imposed on account of his involvement with obscene material depicting adult sadomasochism, *see* U.S.S.G. § 2G2.2(b)(3), and for his aggravating role in the conspiracy offense, *see id.* § 3B1.1(c). We affirm.

## I

## BACKGROUND

Following an investigation which began in November 1990, Schultz and two coconspirators were charged with various violations of federal law relating to the possession, transportation, and distribution of child pornography and of obscene matter depicting adult sadomasochism. Count I charged that Schultz conspired to sell (and sold) a videotape entitled "CESC," depicting adult sadomasochism and violence. Count IX charged Schultz with the substantive offense of distributing a videotape entitled "JUDO," portraying a child engaged in sexually explicit conduct involving neither violence nor sadomasochism.[1]

## II

## DISCUSSION

■ The parties agree that the district court properly "grouped" the conspiracy and substantive counts under U.S.S.G. § 3D1.2(b). The "common scheme or plan" that warranted the grouping of all counts of conviction, *see id.,* included conduct involving not only child pornography (counts I and IX), *see id.* § 2G2.2,[2] but obscene matter portraying sadomasochism (count I), *see id.* § 2G3.1.[3] Although the precise

---

1. The district court determined Schultz's guideline sentence as follows: (1) base offense level 13, *see* U.S.S.G. § 2G2.2(a); (2) two-level enhancement because pornographic materials involved minors under age 12, *see id.* § 2G2.2(b)(1); (3) five-level enhancement because materials were distributed for pecuniary gain, *see id.* § 2G2.2(b)(2); (4) four-level enhancement because materials contained depictions of sadomasochistic conduct or other violence, *see id.* § 2G2.2(b)(3); (5) two-level enhancement for Schultz's aggravated role in the offense, *see id.* § 3B1.1(c); and (6) a two-level reduction for acceptance of responsibility. The resultant total offense level was 24 and the guideline sentencing range 51–63 months. The

court sentenced Schultz to a 60–month prison term.

2. Section 2G2.2 (Transporting, Receiving, or Trafficking in Material Involving the Sexual Exploitation of a Minor) reads, in relevant part:
   (a) Base Offense Level: 13
   (b) Specific Offense Characteristics

   . . . . .

   (3) If the *offense* involved material that portrays sadistic or masochistic conduct *or other depictions of violence,* increase by 4 levels.

3. Section 2G3.1 (Importing, Mailing, or Transporting Obscene Matter) reads, in relevant part:
   (a) Base Offense Level: 6

manner in which the district court grouped the offenses is not entirely clear, the particulars are unimportant to the issues raised on appeal, as Schultz remains "otherwise accountable," *see id.* § 1B1.3(a)(1), for all "relevant conduct" in furtherance of the common scheme. *Id.*

■ The cross reference in U.S.S.G. § 2G3.1(c)(1) directs the application of U.S.S.G. § 2G2.2 where "the *offense involved* ... material [depicting] the sexual exploitation of a minor," *id.* § 2G3.1(c)(1) (emphasis added). Accordingly, U.S.S.G. § 2G2.2—the child pornography guideline—controlled the sentencing guideline determination as to the "acts ... for which [Schultz] would be otherwise accountable" as provided in U.S.S.G. § 1B1.3(a)(ii), (iii), (1).[4]

The dispute relates to the proper application of the enhancement authorized under U.S.S.G. § 2G2.2(b)(3): "If the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, increase by four levels." The district court imposed the four-level enhancement on the theory that three of the objectives of the criminal conspiracy charged in count I involved "obscene matter" depicting adult sadomasochism and constituted "relevant conduct" for which Schultz was "otherwise accountable" within the meaning of U.S.S.G. § 1B1.3, comment. (n. 1). Schultz contends that the word "offense"

in U.S.S.G. § 2G2.2(b)(3) encompasses only the child pornography offense and that the district court erred in considering adult obscene matter depicting sadomasochism. Schultz cites to no authority, but urges that the Commission's placement of the sadomasochism "specific offense characteristic" within § 2G2.2(b)(3) (child pornography guideline) indicates that obscene matter involving adult sadomasochism only was not within the contemplation of the Commission.[5]

■■ The legal determination as to the proper interplay among related guidelines is subject to plenary review. *United States v. Phillips*, 952 F.2d 591, 594 (1st Cir.), *petition for cert. filed*, U.S.App. LEXIS 30, 120 (May 12, 1992); *United States v. Veilleux*, 949 F.2d 522, 528 (1st Cir.1991). We start with U.S.S.G. § 2G3.1 (adult obscene matter), which expressly requires reference to U.S.S.G. § 2G2.2 (child pornography). Thus, materials which contain both adult obscene matter and child pornography are controlled by U.S.S.G. § 2G2.2. Section 2G2.2 neither states nor intimates that sentencing courts are to exclude from consideration the specific offense characteristics relating to adult obscene matter made subject to § 2G2.2(b)(3) through the cross reference in § 2G3.1. Moreover, § 2G3.1(b)(2) authorizes the identical four-level enhancement set forth in § 2G2.2(b)(3), suggesting that the Commission intended that the specific offense

(b) Specific Offense Characteristics

(2) If the *offense* involved material that portrays sadistic or masochistic conduct or other depictions of violence, increase by 4 levels.
(c) Cross Reference
(1) If the *offense* involved transporting, distributing, receiving, possessing, or advertising to receive material involving the sexual exploitation of a minor, *apply § 2G2.2....*
(Emphasis added.)
4. *Relevant Conduct (Factors that Determine the Guideline Range)*
(a) *Chapters Two (Offense Conduct) and Three (Adjustments).* Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level, (ii) *specific offense characteristics* and (iii) *cross references in Chapter Two,* and (iv) adjustments in Chapter Three, shall be determined on the basis of the following:

(1) *all acts and omissions* committed or aided and abetted by the defendants, or *for which the defendant would be otherwise accountable,* that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense....
U.S.S.G. § 1B1.3(a)(1) (emphasis added).

5. Schultz concedes that he would have been held responsible, under § 2G3.1 (adult obscene matter), for the criminal conduct relating to obscene matter depicting adult sadomasochism, but insists that this is not relevant conduct under § 2G2.2 as it "has no relation to the offense of child pornography and provides no basis for an upward adjustment pursuant to § 2G2.2(b)(3)."

characteristics of sadomasochism and violence be dealt with in identical fashion whether depicted in adult obscene matter or child pornography. Under the interpretation urged by Schultz, each time a criminal offense involves adult obscene matter depicting sadomasochism or other violence, as well as nonviolent child pornography, the violence in the adult materials would be ignored as a specific offense characteristic under § 2G2.2. We believe the more sensible interpretation requires the court to consider violence or sadomasochism as a specific offense characteristic warranting a four-level enhancement under either U.S.S.G. § 2G2.2 or U.S.S.G. § 2G3.1.

The Sentencing Guidelines expressly prescribe the factors to be utilized in determining specific offense characteristics. U.S.S.G. § 1B1.3, entitled "Relevant Conduct (Factors that Determine the Guideline Range)," provides in relevant part:

> (a) *Chapter[ ] Two (Offense Conduct)....* Unless otherwise specified, ... specific offense characteristics ... shall be determined on the basis of the following:
>
> (1) all acts and omissions committed or aided and abetted by the defendant, *or for which the defendant would be otherwise accountable,* that occurred during the commission of the offense of conviction ... or that otherwise were in furtherance of that offense....

U.S.S.G. § 1B1.3(a)(1) (emphasis in subsection (1) added). Application note 1 to § 1B1.3(a)(1) states: "In the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant 'would be otherwise accountable' ... includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3(a)(1), comment. (n. 1). The application note thus counsels a broad interpretation of the term "offense" in applying specific offense characteristics under Chapter 2 of the Guidelines. The sale of the "CESC" videotape depicting adult sadomasochism was properly considered "relevant conduct" for which Schultz was "otherwise accountable." [6]

*"Role in the Offense" Enhancement*

■ Schultz contends that the district court improperly imposed a two-level enhancement for his leadership role in the offense, *see* U.S.S.G. § 3B1.1(c), and failed to make the requisite findings contemplated by 18 U.S.C. § 3553(c).[7] As "role in

---

**6.** The interpretation urged by Schultz is further undercut by a recent clarifying amendment to U.S.S.G. § 1B1.1 ("Application Instructions"), which states as follows: " 'Offense' means the *offense of conviction* and *all relevant conduct* under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." U.S.S.G. § 1B1.3, comment. (n. 1(1)) (Nov. 1, 1991). As the Sentencing Commission explained, its recent definition did not alter preexisting practice under the Sentencing Guidelines, but merely "describe[d] how the term 'offense' is used in the guidelines." U.S.S.G. App. C, amendment 388 (Nov. 1991).

**7.** Section 3553(c) requires the sentencing judge to "state in open court the reasons for [the] imposition of the particular sentence." *See also United States v. McDowell,* 918 F.2d 1004, 1012 (1st Cir.1990) (requiring "reasonably specific findings"). The district court managed minimal compliance with 18 U.S.C. § 3553(c). The court heard counsel on Schultz's leadership role in the conspiracy. In imposing sentence, the court denoted each element in its determination of the guideline sentencing range, including the two-level enhancement of the base offense level for Schultz's role in the offense: "The ... two-level adjustment for being the leader, or prime mover in this matter is also *agreed upon by this court.*" (emphasis added). Thus, the court not only determined that Schultz was a leader but impliedly adverted to the presentence report ("PSR") and its characterization of Schultz's role in the offense. The PSR was the central focus of the issues presented at sentencing. Moreover, the PSR provides a sufficient basis for reasoned appellate review. *See McDowell,* 918 F.2d at 1012 (§ 3553(c) requires findings sufficient to enable effective appellate review). In *McDowell,* we remanded because the sentencing court failed to make sufficient findings to support a four-level "role in the offense" enhancement pursuant to U.S.S.G. § 3B1.1(a) (conspiracy "involving five or more participants"). The *McDowell* PSR "neither suggested who the 'five or more participants' might have been, nor discussed why five or more participants were necessarily involved...." *Id.* at 1011. Accordingly, we refused to engage in the "substantial guesswork" required to conduct appellate review. *Id.* at 1012. The PSR in the present case suffers from no such deficiency.

the offense" determinations are fact intensive, *United States v. Akitoye*, 923 F.2d 221, 227 (1st Cir.1991); *United States v. McDowell*, 918 F.2d 1004, 1011 (1st Cir. 1990), we normally review for clear error. *United States v. Dietz*, 950 F.2d 50, 52 (1st Cir.1991); *see McDowell*, 918 F.2d at 1011 (cautioning that " 'considerable respect be paid to the views of the nisi prius court' ") (quoting *United States v. Ocasio*, 914 F.2d 330, 333 (1st Cir.1990)).

■ A two-level enhancement is warranted under U.S.S.G. § 3B1.1(c) where the criminal enterprise involved at least two participants, and "the defendant exercised control over, or was otherwise responsible for organizing the activities of, at least one other individual in committing the crime." *United States v. Akitoye*, 923 F.2d 221, 227 (1st Cir.1991). The conspiracy to which Schultz pled guilty involved three participants. The largely uncontested facts set forth in the PSR were sufficient as well to support the finding that Schultz "exercised control over" at least one coconspirator.

According to the PSR, Schultz instructed coconspirator Mark Colen to bring several videotapes, including "JUDO" and "CESC" to a January 10, 1991 meeting with a government agent. Colen arrived with the tapes, and remained while Schultz conducted the sale to the informant. Although Schultz concedes that the meeting occurred as represented, he disputes the PSR characterization that Colen delivered the tapes *on instructions* from Schultz. Instead, Schultz argues, without testimonial or other evidentiary support, that Colen acted at the behest of the agent. The district court was not required to credit Schultz's unsubstantiated contention.

The district court finding that Schultz exercised a leadership role over Colen is supported by undisputed evidence as well. First, Schultz drew a diagram for the undercover agent, depicting himself at the apex of the criminal enterprise. Second, Schultz possessed the greater capacity to reproduce videotapes, rented the office space where tapes were reproduced, and rented storage space for videotapes, mailing lists, and other materials used to facilitate the illegal enterprise. Third, the record indicates that "most" of the pornographic materials involved in the conspiracy were turned over to Schultz by his coconspirators. Fourth, when the coconspirators were arrested, 420 tapes were seized from Schultz, 400 from Bailey, and 100 from Colen. Finally, "most" of the 96 videotapes made available to the government operatives during the course of the conspiracy were acquired from Schultz. There was sufficient evidence to support the two-level enhancement under U.S.S.G. § 3B1.1(c).

*Affirmed.*