**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert ELLISON, Defendant–Appellant.**

**No. 96–2891.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 16, 1997.

Decided April 30, 1997.

Rehearing and Suggestion for Rehearing En Banc Denied June 18, 1997.

78

Barry Rand Elden, Chief of Appeals, Ryan Stoll (argued), Office of the U.S. Atty., Crimi-

nal Appellate Division, Chicago, IL, for Plaintiff–Appellee.

Michael F. Lefkow (argued), Chicago, IL, for Defendant–Appellant.

Before ESCHBACH, COFFEY, and DIANE P. WOOD, Circuit Judges.

ESCHBACH, Circuit Judge.

Ellison pled guilty to knowing receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2), a charge that arose from Ellison's unwitting participation in a federal sting operation designed to entice targets into buying illegal pornographic materials through the mails. The district court sentenced Ellison to a prison term of 33 months, based in part on the application of Sentencing Guideline § 2G2.2, which set his base offense level at 15. The sentence also included an enhancement for Ellison's possession of a stack of pornographic magazines depicting minors performing sadomasochistic acts. Before our court, Ellison makes two challenges to his sentence. Finding no merit in either challenge, we affirm.

## I.

Based on telltale records seized from an international distributor of child pornography, United States Postal Inspectors targeted Ellison as part of a nationwide sting operation designed to entice known pedophiles into buying illegal pornographic materials through the mails. The scheme ran as follows. In July of 1995, Postal Inspectors mailed Ellison a promotional letter introducing him to a dummy pornography company they called "Island Male," which purported to offer videotapes of "the hottest most irresistible lads." Ellison returned the customer interest form, and shortly thereafter received another letter from the dummy company, offering sexually explicit videotapes in several categories. Ellison took the bait. He ordered a tape depicting young boys 7–11 years of age engaged in sexual activity, enclosing a $15 money order as payment. On September 7, 1995, Ellison received his video selection through the mail, and the Postal Inspectors were not far behind. Shortly after the tape was delivered, the Inspectors

showed up at Ellison's door and, acting under a valid search warrant, found the videotape opened on Ellison's coffee table. Ellison then consented to a more thorough search of his house, during which the police found Ellison's magazine collection of illegal child pornography. Several of the magazines, including one entitled "Young Boys and Bondage," featured prepubescent boys engaged in sadistic and masochistic acts. The Inspectors arrested Ellison for receipt of child pornography.

On December 20, 1995, a grand jury returned a two-count superseding indictment charging Ellison with violations of 18 U.S.C. § 2252. Count 1 charged illegal receipt of the child pornographic videotape through the mails in violation of § 2252(a)(2). Count 2 charged Ellison with possession of three or more child pornographic magazines—the magazines found by the Postal Inspectors during the consent search of Ellison's home—in violation of § 2252(a)(4). In exchange for the government's promise to drop the possession charge, Ellison pled guilty to the receipt charge and proceeded to sentencing. The district court imposed a sentence of 33 months imprisonment, the highest sentence within the allowable range of 27–33 months. In arriving at the appropriate sentencing range, the district court applied Guideline § 2G2.2, which set Ellison's base offense level at 15. U.S.S.G. § 2G2.2(a). The court also made several adjustments to the base offense level (both upward and downward), including a four-level enhancement under § 2G2.2(b)(3) for Ellison's possession of the sadomasochistic magazines found at his home. Ellison objects to his sentence on two grounds. First, he argues that the district court applied the wrong Guideline to set his base offense level, claiming that § 2G2.4, not § 2G2.2, was the proper Guideline to use. Second, he argues that because the videotape that prompted his conviction for receipt contained no sadomasochistic acts, the enhancement he received for sadomasochistic portrayals under § 2G2.2(b)(3) was improper. We have juris-

diction of these challenges under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## II.

The first issue on appeal is which Guideline section, § 2G2.2 or § 2G2.4, should have been used to set Ellison's base offense level. At sentencing, the district court stated that it was bound to apply § 2G2.2 because that Guideline specifically listed § 2252(a)(2) (Ellison's offense of conviction) in the "Statutory Provisions" section of the Commentary. Ellison argues that the district court had the discretion to apply either § 2G2.2 or § 2G2.4, and in fact should have applied the latter. On our *de novo* review of the district court's decision to apply a specific Sentencing Guideline, *see United States v. Bigelow*, 914 F.2d 966, 973 (7th Cir.1990), we find that the district court properly applied § 2G2.2 to set Ellison's base offense level.

Descriptions of the criminal statute under which Ellison was convicted and of both Guidelines are helpful at this point. Ellison was convicted under 18 U.S.C. § 2252(a), which makes illegal four different "activities relating to material involving the sexual exploitation of minors." Subsection (a)(1) prohibits the knowing transportation or shipment in interstate or foreign commerce of such material; subsection (a)(2) (Ellison's crime) prohibits the knowing receipt or distribution of such material through the mails or by an interstate shipment; subsection (a)(3) prohibits the knowing sale of or possession with intent to sell such material; and subsection (a)(4) prohibits the mere possession of three or more books, magazines, periodicals, films or videotapes portraying such material. 18 U.S.C. § 2252(a)(1)(4).[1]

Together, Guidelines § 2G2.2 and § 2G2.4 cover all four subsections of § 2252(a) as follows. Guideline § 2G2.2, the Guideline applied by the district court, indicates by its title that it should be applied if the defendant was "Trafficking ... Receiving, Transporting, Shipping or Advertising Material Involv-

---

1. Section 2252(b) sets the minimum and maximum punishment for violations of § 2252(a)(1)–(4). Notably, convictions under subsections (a)(1), (a)(2), and (a)(3) carry higher minimum

and maximum sentences than a conviction for mere possession under subsection (a)(4). See 18 U.S.C. § 2252(b)(1)–(2).

ing the Sexual Exploitation of a Minor." Under the version of the Sentencing Guidelines applicable at the time of Ellison's sentencing, § 2G2.2 carries a base offense level of 15.[2] The Commentary to § 2G2.2 includes a list of "Statutory Provisions" to which the Guideline should be applied, specifically listing subsections (a)(1)–(a)(3) of § 2252, which encompass Ellison's conviction under § 2252(a)(2).

Guideline § 2G2.4, the Guideline Ellison believes should be applied to set his base offense level, indicates by its title that it should be used to punish the "Possession of Materials Depicting a Minor Engaged in Sexually Explicit Conduct." Ellison prefers this Guideline because it carries a lesser base offense level of 13.[3] Of the four § 2252(a) subsections, only subsection (a)(4) is listed in the "Statutory Provisions" section of the Commentary to § 2G2.4. Thus, subsections (a)(1)–(a)(3) of § 2252 are specifically assigned to Guideline § 2G2.2, while subsection (a)(4) is specifically assigned to Guideline § 2G2.4.[4] With this background, we move on to analyze the district court's decision.

The Sentencing Guidelines provide general instructions on how a sentencing court should select the appropriate offense Guideline. Section 1B1.2 provides that the court "shall apply the offense guideline section in Chapter Two most applicable to the offense of conviction." U.S.S.G. § 1B1.2(a). In this case, the district court noted, and we agree, that the Sentencing Commission has given a specific and unequivocal indication of which Guideline is most applicable to a conviction under 18 U.S.C. § 2252(a)(2) in the "Statutory Provisions" section of the Commentary to § 2G2.2. Conversely, the "Statutory Provisions" section of the Commentary to Guideline § 2G2.4—the Guideline Ellison prefers—states only that it applies to subsection (a)(4) of § 2252. Commentary that serves to explain how a Guideline is to be applied is generally binding unless it "violates the Con-

stitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993).

■ Despite this explicit Commentary, Ellison counters that the district court had discretion to apply § 2G2.4. He bases this argument on Application Note 3 of Guideline § 1B1.1,[5] also binding Commentary under *Stinson,* which reads as follows:

The list of "Statutory Provisions" in the Commentary to each offense guideline does not necessarily include every statute covered by that guideline. In addition, some statutes may be covered by more than one guideline.

U.S.S.G. § 1B1.1, comment. (n. 3). Ellison insists that this Application Note always allows a court to disregard a Guideline's listing of "Statutory Provisions." We disagree. Whatever Application Note 3's relationship to the "Statutory Provisions" listings generally, it did not allow the sentencing court to ignore the specific "Statutory Provisions" Commentary here. Ellison makes no persuasive argument as to why this Application Note requires, or even allows, the application of § 2G2.4 in this instance.

First, the fact that the "Statutory Provisions" listings are not always all-inclusive is no reason to ignore the Sentencing Commission's specific instruction on which Guideline should govern here. The Commission could not have been clearer or more complete in its breakdown and assignment of the four subsections of § 2252(a). The amendment history of these Guideline sections shows that this breakdown was deliberate. When Guideline § 2G2.2 was passed in 1987, the Commission originally listed § 2252(a) in the "Statutory Provisions" section of the Commentary without breaking it down into its four subsections. However, when Guideline § 2G2.4 (the possession guideline) was added four

---

**2.** The November 1996 amendments to this Guideline increased the base offense level to 17.

**3.** The November 1996 amendments to this Guideline increased the base offense level to 15.

**4.** Although both Guidelines were amended in November of 1996 to include additional statutory

provisions, the breakdown and assignment of the § 2252(a) subsections between Guideline § 2G2.2 and § 2G2.4 remains unchanged.

**5.** Guideline § 1B1.1 houses several general principles to assist the sentencing court in the correct application of the Guidelines.

years later, the Commentary to § 2G2.2 was changed so that only subsections (a)(1), (a)(2), and (a)(3) of § 2252 were listed under the "Statutory Provisions" section of that Guideline. Subsection (a)(4) was listed separately under the "Statutory Provisions" section of newly created § 2G2.4. In addition, when Guideline § 2G2.4 was added on November 1, 1991, its title read, "Receipt or Possession of Materials Depicting a Minor Engaged in Sexually Explicit Conduct." However, less than a month later on November 27, 1991, the words "Receipt or" were removed from the title. This deletion makes sense given that receipt of such materials was already covered under § 2G2.2. We are confident that Application Note 3 to § 1B1.1 should not be interpreted to allow the district court to ignore the Sentencing Commission in this case, where it assigned each subsection of § 2252(a) to a specific Guideline in this deliberately mutually exclusive fashion.

Likewise, the second statement in Application Note 3, that "some statutes may be covered by more than one guideline," does little to advance Appellant's argument that we should disregard the clear "Statutory Provisions" Commentary in this case. Ellison argues that this statement applies to him, because the Statutory Index to the Sentencing Guidelines lists both § 2G2.2 and § 2G2.4 in connection with Ellison's charged offense. *See* U.S.S.G. Appendix A. This argument is misleading. Although the Index lists both Guidelines as applicable for violations of "28 U.S.C. § 2252," it does not separate § 2252(a) into its four subsections, as does the Commentary to the specific Guideline sections. Thus, the Statutory Index does not conflict with, but is merely less specific than, the Guideline Commentary on this point.[6] As mentioned, the Commission has made it clear that § 2252(a)(2) does not present a situation where more than one Guideline will apply, at least as between § 2G2.2 and § 2G2.4.

■ Finally, we disagree with Ellison's argument that § 2G2.2 shouldn't be applied because he wasn't a "trafficker" of the mate-

rials, but instead received them solely for his personal use. This argument is based on Ellison's erroneous reading of § 2G2.2 to require "trafficking." The title of Guideline § 2G2.2 reads:

Trafficking in Material Involving the Sexual Exploitation of a Minor; Receiving, Transporting, Shipping, *or* Advertising Material Involving the Sexual Exploitation of a Minor; Possessing Material Involving the Sexual Exploitation of a Minor with Intent to Traffic.

U.S.S.G. § 2G2.2 (emphasis added). Despite the clear, disjunctive language above, Ellison would like us to read "receiving" as "receiving with the intent to traffic." He argues that not all "receipt" of the prohibited pornographic materials should trigger use of § 2G2.2, which he self-servingly calls the "trafficking guideline." Instead, Ellison asserts that how he intended to use the materials after receipt makes the difference: if he received them intending to use them only for personal use, § 2G2.2 should not apply.

We are not surprised that Ellison can cite no case support for this intent-based argument. The division of § 2252(a)'s subsections between Guideline § 2G2.2 and § 2G2.4, assigning only mere possession under § 2252(a)(4) a lower base offense level, indicates that Guideline § 2G2.2 is intended to punish conduct that creates or strengthens the market for child pornography. Ellison's conduct clearly fits this bill: even the receipt of the prohibited materials for personal use, without more, keeps producers and distributors of this filth in business. *See also United States v. Moore*, 916 F.2d 1131, 1137 (6th Cir.1990) (rejecting defendant's argument that "receiving" under § 2252(a)(2) is not intended to reach those who merely receive such materials for personal use).

In sum, the Sentencing Commission's Commentary to § 2G2.2 and § 2G2.4 gives specific instructions on which Guideline it intends to govern each of the four subsections of 18 U.S.C. § 2252(a). We have little trouble concluding that the district court was correct to follow these directions and to ap-

---

**6.** In addition, the Commission itself discourages reliance on the Statutory Index, stating that the Index is only meant to assist in the determination of the appropriate Guideline section, and is thus not binding on a sentencing court. *See* U.S.S.G. § 1B1.2, comment. (n. 1).

82

ply § 2G2.2 to set Ellison's base offense level. *See United States v. Eversley,* 55 F.3d 870, 872 (3d Cir.1995) (upholding the district court's choice of Guideline where that Guideline's "Statutory Provisions" section listed defendant's offense of conviction); *United States v. Locklear,* 24 F.3d 641, 647 (4th Cir.1994) (same).

### III.

■ Having decided that § 2G2.2 was the correct offense Guideline to apply, we turn now to address Ellison's argument that his sentence was enhanced improperly under this Guideline. Under the heading "Specific Offense Characteristics," Guideline § 2G2.2 lists four enhancements available to the district court. The third enhancement on this list allows a sentencing court to increase the base offense level by four "if *the offense* involved material that portrays sadistic or masochistic conduct or other depictions of violence." U.S.S.G. § 2G2.2(b)(3) (emphasis added). The district court applied this enhancement to Ellison, based on the sadomasochistic magazines found in Ellison's possession when the Inspectors arrested Ellison for receipt of the illegal videotape.

Ellison disputes this enhancement, arguing that the phrase "the offense" in the text of the enhancement should be read as "only the offense of conviction," not as "the offense of conviction including other uncharged but relevant conduct." Based on this reading, he argues that the enhancement is inapplicable because he was charged with receipt of a child pornographic videotape through the mails, and the videotape he received contained no portrayals of sadomasochism. Only the magazines found at his home, which did not trigger his offense of conviction, portrayed sadomasochism. Although this factual account is uncontested, Ellison's faulty legal interpretation dooms his argument.

The Guidelines define the term "offense" as "the offense of conviction and all relevant conduct under Section 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context."

U.S.S.G. § 1B1.1, comment. (n. 1(*l*)). Of the many arguments Ellison advances for our adoption of his definition of "offense," we need only discuss two. First, Ellison makes the surprising blanket argument that if an enhancement is listed under the heading "specific offense characteristics," we should abandon the Sentencing Guideline's definition of the word "offense," and instead adopt his narrow definition. In other words, Ellison thinks that a specific offense characteristic enhancement can be applied only if the characteristic describes the charged offense, not if it describes other relevant but uncharged conduct. This, of course, is incorrect. Guideline § 1B1.3, which defines the conduct to be considered for sentencing purposes, states in relevant part that "[u]nless otherwise specified, ... specific offense characteristics ... shall be determined on the basis of ... all acts and omissions committed ... by the defendant ... during the commission of the offense of conviction." U.S.S.G. § 1B1.3(a). Quite clearly, this language does not forbid the import of conduct outside of the charged offense to enhance a sentence as long as that conduct is included within § 1B1.3's definition of relevant conduct. The listing of an enhancement under the heading "specific offense characteristics" does not require us to truncate the definition of "offense" by ignoring the full range of relevant conduct under § 1B1.3. *See, e.g., United States v. Nafzger,* 974 F.2d 906, 916 (7th Cir.1992) (requiring the sentencing court to consider relevant conduct other than conduct of charged offense when figuring the amount of "loss," a specific offense characteristic to § 2B1.2); *United States v. LeCompte,* 108 F.3d 948, 951 (8th Cir.1997) ("[T]he Sentencing Guidelines allow the consideration of § 1B1.3 relevant conduct in determining specific offense characteristics under the § 2A2.2(b)(3) enhancement."); *United States v. Sokolow,* 91 F.3d 396, 410 (3d Cir.1996) (allowing the court to consider uncharged but relevant conduct when calculating the "value of funds," a specific offense characteristic under § 2S1.2(b)); *United States v. Mullens,* 65 F.3d 1560, 1564 (11th Cir.1995) (same).[7]

---

**7.** Ellison's argument to the contrary is based on erroneous readings of *United States v. Chapman,* 60 F.3d 894 (1st Cir.1995) and *United States v. Surratt,* 87 F.3d 814 (6th Cir.1996). Although

Next, Ellison makes the alternative argument that his possession of the sadomasochistic magazines at the time of his arrest is too remote to be considered "relevant conduct" under the Guideline definition. We review a district court's factual findings regarding relevant conduct for clear error. *United States v. Briscoe,* 65 F.3d 576 (7th Cir.1995). Guideline § 1B1.3 directs the sentencing court to consider as relevant "all acts and omissions committed ... by the defendant ... that occurred during the commission of the offense of conviction...." U.S.S.G. § 1B1.3(a)(1)(A). During the commission of the crime of Ellison's conviction—receipt of the pornographic videotape—Ellison was committing another crime: possession of child pornographic magazines, a crime punishable under 18 U.S.C. § 2252(a)(4). While admitting that his illegal possession of the pornographic magazines was contemporaneous with receipt of the pornographic videotape, Ellison argues that our decision in *United States v. Ritsema,* 31 F.3d 559 (7th Cir.1994), should preclude consideration of his possession of the magazines as relevant conduct. In *Ritsema,* we stated that despite the unrestricted language in § 1B1.3(a), not all contemporaneous conduct should automatically be considered relevant under that section by a sentencing court. *Id.* at 566. However, *Ritsema* was based on a narrow set of facts indicating that the "relevant conduct" being considered bore no relation to the offense of conviction. Ellison's contemporaneous receipt of new pornography and possession of older pornography is far from the unusual type of contemporaneous, yet "wholly remote" criminality we were uncomfortable including as relevant in *Ritsema.*

This is clearly a case where the goal of including uncharged but relevant conduct, to take into account all conduct indicating the seriousness of the charged offense, was served by the district court's application of the enhancement. Far from being unrelated, both Ellison's receipt and his possession of child pornographic materials violate the same criminal statute and indicate his dangerous propensities in the realm of sexual exploitation of minors.[8] *See also United States v. Schultz,* 970 F.2d 960 (1st Cir.1992) (upholding a sadomasochism enhancement under § 2G2.2(b)(3) where defendant was convicted of child pornography, but only the adult pornography in his possession contained depictions involving sadomasochism).[9] The district court's inclusion of the sadomasochistic magazines as relevant conduct to enhance Ellison's sentence under § 2G2.2(b)(3) was far from clear error.

## IV.

Accordingly, the sentencing determination of the district court is AFFIRMED.

---

both cases discussed application of a specific offense characteristic under § 2G2.2, they merely addressed whether the conduct at issue fit into the language of the specific offense characteristic. Neither case discussed the relevant conduct issue for which Appellant cites them.

8. Ellison seems to make an argument that because he acquired the magazines some twenty years ago (when receipt and ownership of this pornography was legal), they are too temporally remote to be considered relevant conduct. The temporal relevance of the magazines, however, is unrelated to when and how he acquired them; they are relevant because he illegally possessed them (and, he admitted, "used" them to keep him from seeking out boys) contemporaneously with his crime of receipt.

9. Ellison's other arguments against the application of the § 2G2.2(b)(3) enhancement are also without merit. he application of the § 2G2.2(b)(3) enhancement are also without merit.