IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-10750
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT SCOTT FOWLER,

Defendant-Appellant.

_____

Appeal from the United States District Court for
the Northern District of Texas
_____

June 23, 2000

Before REAVLEY, SMITH and EMILIO M. GARZA, Circuit Judges.

REAVLEY, Circuit Judge:

Robert Fowler appeals the sentence he received after pleading guilty to interstate transportation of child pornography in violation of 18 U.S.C. § 2252(a)(1). Under his plea agreement Fowler retained the right to raise on appeal the sentencing issues addressed herein. We agree with his second argument and therefore remand this case to the district court for resentencing.

A.     Distribution of Child Pornography

Fowler first argues that his sentence should not have been enhanced under U.S.S.G. § 2G2.2(b)(2), which increases the defendant's offense level if the offense involved "distribution." Fowler argues that the images he sent to "Katrina," who turned out to be an undercover agent, were not for pecuniary gain. In a case involving similar facts, we held that the enhancement under § 2G2.2(b)(2) is appropriate if the defendant distributed the images "with a purpose of enticing another person to have sex with him." United States v. Canada, 110 F.3d 260, 263 (5th Cir. 1997). Fowler urges us to reconsider this holding in Canada in light of authority from other circuits. One panel of this court cannot overrule the decision of another panel, see FDIC v. Dawson, 4 F.3d 1303, 1307 (5th Cir. 1993), nor are we inclined to seek en banc review of this issue.

Fowler also argues that Canada is factually distinguishable because the evidence shows that he had already reached an agreement to meet with Katrina before he sent the images. The district court rejected this argument. Whether the images were sent to entice Katrina presents a factual question, and the district court's factual findings are reviewed only for clear error. See United States v. Snell, 152 F.3d 345, 346 (5th Cir. 1998). The district court's finding is not clearly erroneous. Even though the record contains evidence that Katrina had agreed to meet Fowler before he transmitted the images, there was also evidence that Fowler himself considered the agreement highly tentative, and that he sent the images to maintain Katrina's interest in meeting with him and engaging in specific sexual acts.

B.    Material Portraying Sadistic Conduct

Fowler argues that the district court erred in enhancing his sentence under U.S.S.G. § 2G2.2(b)(3), which provides for an increase in the offense level "[i]f the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence."

The basis of this enhancement is that Fowler's residence was searched and electronic images of sadistic sexual conduct, primarily involving bondage, were recovered. The government claims that two of the images depict minors. According to the government's sentencing memorandum the two images of minors had 1996 dates on directories to the floppy disks where they were found. Fowler does not dispute that some of the images portray sadistic conduct or other depictions of violence under the guideline. His argument is that he pleaded guilty to one count of sending an image to Katrina, and that these other, sadistic images found in his home were not sent to Katrina or any other party. He also argues that there was no expert testimony supporting the government's position that some of the images were of minors.

Even if the government correctly argues that the record supports a finding that some of the images portraying sadistic conduct were of minors, we agree with Fowler that the possession of these images should not have resulted in an enhanced sentence under § 2G2.2(b)(3).

The image Fowler electronically mailed which was the basis of the count of conviction did not depict sadistic conduct. It was sent on October 28, 1998, after Katrina

3

and Fowler met on the Internet and Katrina asked Fowler if he had any more of "those" pictures. The issue presented is whether the possession of the sadistic images is "relevant conduct" under the guidelines, in circumstances where (1) the defendant pleaded guilty to transporting an image of child pornography, and (2) other images, including two images of minors, which were not transported but were merely possessed by the defendant, depicted sadistic conduct.

The guidelines provide that in calculating the offense level the district court may consider acts in addition to the acts underlying the offense of conviction so long as those other acts constitute "relevant conduct" as defined in the guidelines. Under U.S.S.G. § 1B1.3(a)(1), the base offense level and adjustments thereto shall be determined on the basis of "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." Under this guideline, the receipt or possession of the sadistic images would not constitute relevant conduct. Fowler pleaded guilty to one act of transporting and shipping on October 28, 1998 an image depicting sexual activity of a minor. The electronic mailing of the image that was the basis of the count of conviction occurred at a discrete moment, and Fowler's receipt of the other, sadistic images did not occur "during the commission of the offense of conviction." Further, there was no proof that the sadistic images were part of preparing for the offense of conviction or avoiding detection of the crime. On the contrary, the

4

government's sentencing memorandum indicates that the images that Fowler sent to Katrina, whom Fowler thought was a sexually inexperienced minor, were part of his efforts to entice Katrina to meet with him and to engage in certain non-violent sexual acts. There is no indication in the record that Fowler thought of sending the sadistic images to Katrina or anyone else. The record indicates if anything that Fowler refrained from sending such images because he believed they would only have impaired his efforts to entice Katrina.

The guidelines further provide that relevant conduct may include acts committed by the defendant "that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). "Common scheme or plan" is defined as two or more offenses that are "substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." Id. § 1B1.3 n.9(A). Again, the record does not reflect that the possession of the sadistic images were part of Fowler's plan to entice Katrina. An equally if not more plausible scenario is that Fowler deliberately refrained from sending these images to Katrina, for fear that they would dissuade her from meeting him in person.

"Same course of conduct" is defined as follows: "Offenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." Id.

5

§ 1B1.3 n.9(B).  Factors to consider in making this determination include "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses."  Id.

Evidence submitted with the government's sentencing memorandum indicates dates for the sadistic images running sporadically from 1993 through 1998.  According to the government, two of the images with 1996 dates depicted minors.  Fowler's communications with Katrina did not begin until December 1997.  The government did not show that Fowler's receipt of the images depicting sadistic conduct were part of the plan to entice Katrina that led to the offense of conviction or any similar plan.  In our view, the receipt of the sadistic images and the transmission of the non-sadistic image were not sufficiently related to conclude that they were part of the same course of conduct.

The dissent would make the possession of any child pornography a part of the offense of the interstate transportation of child pornography.  We do not believe the guidelines should be construed so broadly.[1]

Because we conclude that the enhancement under § 2G2.2(b)(3) was unwarranted,

---

[1]  The Seventh Circuit in United States v. Ellison, 113 F.3d 77 (7th Cir. 1997), found a relevant relation between the possession of sadomasochistic magazines and the receipt of child pornography because the defendant admitted using the magazines to keep him from seeking out boys.  Id. at 83 n.8.  Both the videotape received and the magazines possessed were used the same way – as a substitute for live victims.  Fowler, on the other hand, committed the crime of conviction to entice a live victim, a purpose entirely remote from the possession of sadistic images.

we vacate the sentence and remand this case to the district court for resentencing.

VACATED and REMANDED.

EMILIO M. GARZA, Circuit Judge, concurring in part and dissenting in part:

Robert Scott Fowler pled guilty to a single count of interstate transportation of child pornography. *See* 18 U.S.C. § 2252(a)(1). The district court sentenced him to eighty-seven months incarceration after applying two enhancements to his sentence which he challenges on appeal. I agree with the majority that the district court properly enhanced his sentence because his offense involved "distribution." *See* United States Sentencing Commission, *Guidelines Manual*, § 2G2.2(b)(2) (1998). However, I disagree with the majority's view that Fowler's sentence should not have been enhanced under Sentencing Guideline § 2G2.2(b)(3) for possessing sadistic material. Accordingly, I dissent in part.

Fowler was convicted after he transported child pornography to "Katrina," a detective in the Hillsborough County Sheriff's Office in Tampa, Florida who Fowler thought was a fourteen-year-old girl. He sent the images to her to induce her to have sex with him. He was arrested at a hotel after he flew to Tampa to meet with her.

Fowler consented to have his residence searched. Government agents found seventy-six pornographic and sadistic images on his computer equipment, two of which they argued involved minors.

Section 2G2.2(b)(3) allows a four-level enhancement "[i]f the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence." "Offense" is broadly defined to include "the offense of conviction and all relevant conduct

7

under § 1B1.3." USSG § 1B1.1 comment. (n.1(l)).[2] "Relevant conduct" is in turn defined as "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense . . . ." USSG § 1B1.3(a).

The district court applied the § 2G2.2(b)(3) enhancement after concluding that Fowler's possession of two sadistic images depicting minors[3] was "relevant conduct" to his distribution offense. We review this finding only for clear error, *see United States v. Wall*, 180 F.3d 641, 644 (5th Cir. 1999) ("A district court's determination of what constitutes relevant conduct for purposes of sentencing is reviewed for clear error."), and I cannot agree

---

[2] By contrast, § 2G2.2(b)(1) requires an enhancement "[i]f the material involved a prepubescent minor or a minor under the age of twelve years." USSG § 2G2.2(b)(1). This enhancement's requirement that "the material" involve a prepubescent minor indicates a broader scope for § 2G2.2(b)(3), which applies when "the offense involved" sadistic material. *Id.* § 2G2.2(b)(3).

[3] Fowler argues in passing that the government failed to show that the two images depicted minors. He did not object to the enhancement on this grounds below, and thus we review this argument for plain error. *See United States v. Cabral-Castillo*, 35 F.3d 182, 188-89 (5th Cir. 1994).
A sentencing court may rely on evidence so long as it has sufficient indicia of reliability, which includes being stated in the PSR. *See United States v. Vital*, 68 F.3d 114, 120 (5th Cir. 1995) ("A presentence report is considered reliable and may be considered as evidence by the trial judge in making sentencing determinations."). The PSR stated that the images were sadistic and that two of the images involved minors. Additionally, the government submitted copies of the two images. Because Fowler did nothing (and, indeed, still has done nothing) to rebut the PSR's statement that the images involved minors, the court properly treated them as involving minors. *See United States v. Lowder*, 148 F.3d 548, 552 (5th Cir. 1998) ("Mere objections [to the PSR] do not suffice as competent rebuttal evidence."); *Vital*, 68 F.3d at 120 ("Vital failed to present any evidence to support his objection to the court's reliance on the information set forward in the PSR pertaining to August's testimony. Consequently, the district court's reliance on the PSR was not clearly erroneous.").

with the majority that the court's finding was clearly erroneous.

Fowler's possession of the sadistic images is proscribed by the same criminal statute as his distribution conviction, *see* 18 U.S.C. § 2252(a)(1) (punishing knowing transportation); *id.* § 2252(a)(4) (punishing knowing possession), and it was literally an "act[] committed . . . by the defendant . . . that occurred during the commission of the offense of conviction," USSG § 1B1.3(a). In this respect, the enhancement here fits within § 2G2.2(b)(3)'s clear intent to punish all relevant uncharged conduct. Thus, the court properly found that Fowler's possession of sadistic child pornography was relevant conduct to his transportation offense.

The majority concludes to the contrary by defining Fowler's "offense" narrowly. The majority implies that, because Fowler received the sadistic images two years before he committed the offense conduct, Fowler's receipt of the images cannot be "relevant conduct" to the offense to which he pled guilty. This view of Fowler's relevant conduct ignores the fact that, although he received the images two years before he committed the instant offense, he continued to possess them up to and during the time of the offense. His continued possession of the sadistic images—itself prohibited by statute—was thus "relevant conduct" to his violation of another part of the same child pornography statute.

The majority cites no cases which support its narrow view of "relevant conduct."[4]

---

[4] Although we have not addressed the question presented here, we have uniformly upheld application of the § 2G2.2(b)(3) enhancement. *See, e.g.*, *United States v. Canada*, 110 F.3d 260 (5th Cir. 1997); *United States v. Kimbrough*, 69 F.3d 723 (5th Cir. 1995).

Instead, the only case to have addressed this issue contradicts the majority's view. In *United States v. Ellison*, 113 F.3d 77 (7th Cir. 1997), the defendant was convicted of receiving child pornography and his sentence was enhanced based on magazines found in his house containing sadistic pictures of boys. The Seventh Circuit upheld the enhancement because "[d]uring the commission of the crime of Ellison's conviction—receipt of the pornographic videotape—Ellison was committing another crime: possession of child pornographic magazines, a crime punishable under 18 U.S.C. § 2252(a)(4)." *Id.* at 83. The court concluded that, "[f]ar from being unrelated, both Ellison's receipt and his possession of child pornographic materials violate the same criminal statute and indicate his dangerous propensities in the realm of sexual exploitation of minors." *Id.* In reaching this conclusion, the court specifically rejected the defendant's contention, accepted by the majority here, that his sentence could not be enhanced for the magazines because he had received them twenty years earlier.[5] *See id.* at 83 n.8 ("Ellison seems to make an argument that because he acquired the magazines some twenty years ago (when receipt and ownership of this pornography was legal), they are too temporally remote to be considered relevant conduct. The temporal relevance of the magazines, however, is unrelated to when and how he

---

[5] The First Circuit has reached a similar conclusion in allowing the enhancement based on sadistic images involving only adults. *See United States v. Schultz*, 970 F.2d 960, 962-63 (1st Cir. 1992). Even though the child pornography in *Schultz* did not involve sadistic images, the First Circuit held that the enhancement was proper because the defendant also distributed adult pornography involving sadistic images. Noting that the Sentencing Guidelines "counsel[] a broad interpretation of the term 'offense,'" the First Circuit held that the enhancement was proper because "[t]he sale of the 'CESC' videotape depicting adult sadomasochism was properly considered 'relevant conduct' for which Schultz was 'otherwise accountable.'" *Id.* at 963.

10

acquired them; they are relevant because he illegally possessed them (and, he admitted, 'used' them to keep him from seeking out boys) contemporaneously with his crime of receipt.").[6]

The Seventh Circuit's reasoning in *Ellison* is correct. A defendant's possession of sadistic child pornography is clearly "relevant conduct" to that defendant's simultaneous transmission of child pornography. Because the majority erroneously concludes to the contrary, I dissent.

---

[6] The majority relies on this footnote to argue that *Ellison* is distinguishable. Under the majority's view, *Ellison* only held that the possession of sadistic child pornography was relevant conduct to the receipt of other child pornography because the defendant used both types of pornography in "the same way—as a substitute for live victims." The majority premises this view on the parenthetical language in the footnote about the defendant's use of the materials "to keep him from seeking out boys." *Id.* As is clear from the rest of the footnote and the opinion, this parenthetical language only bolstered the court's otherwise-sufficient reasoning: that contemporaneous possession of child pornography is relevant conduct to another child pornography offense because both types of conduct violate the same criminal statute and both indicate the same "dangerous propensities in the realm of sexual exploitation of minors." *Id.* at 83. This same basic reasoning justifies the enhancement here.